**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert L. HAMILTON, Defendant– Appellant.**

**No. 91–1086.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1991.

Decided Sept. 24, 1991.\*

Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Office of U.S. Atty., Detroit, Mich., Marlene Dayne, Asst. U.S. Atty. (briefed), Office of U.S. Atty., Flint, Mich., for plaintiff-appellee.

Kenneth R. Sasse, Detroit, Mich. (argued and briefed), for defendant-appellant.

Before MARTIN and NELSON, Circuit Judges, and JARVIS, District Judge.\*\*

\* This decision was originally issued as an "unpublished decision" filed on September 24, 1991. On November 4, 1991, the court designated the opinion as one recommended for full text publication.

\*\* The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation.

PER CURIAM.

The defendant, Robert L. Hamilton, pleaded guilty to possession of controlled substances with intent to distribute and was sentenced to imprisonment for 33 months, a term within the range prescribed by the sentencing guidelines. He now appeals his sentence, contending that it reflects a misreading by the district court of the guideline sections relating to departures. Concluding that the district court's understanding of the guidelines was correct, we shall affirm the sentence.

## I

Defendant Hamilton is a doctor of osteopathy. He became a compulsive gambler and incurred significant debts to his bookmaker. As his debts mounted, Dr. Hamilton received threats of harm to himself and his family if he did not make good on his obligations. To obtain the funds necessary to pay his gambling debts, he sold narcotic drugs to a fellow gambler.

The government filed an information charging Dr. Hamilton with one count of possessing approximately 8,400 tablets of Tylenol IV with intent to distribute them, in violation of 21 U.S.C. § 841(a)(1). He pleaded guilty to this charge.

The district court held a sentencing hearing at which Dr. Hamilton sought to convince the court that it should impose a sentence below the range (33–41 months) indicated by the Sentencing Guidelines. Dr. Hamilton argued that a downward departure would be warranted under U.S.S.G. § 5K2.13 because he suffered from diminished mental capacity and under U.S.S.G. § 5K2.12 because he committed his crimes under duress.[1]

In support of his position Dr. Hamilton presented various medical reports and testimony from three expert witnesses. Dr. Emanuel Tanay, a psychiatrist, expressed the opinion that Dr. Hamilton was a pathological gambler and that he suffered from chronic depression. Because of these problems, Dr. Tanay found a significant reduction in mental capacity. Dr. Tanay explained that "I don't mean that his capacity intellectually was reduced. What I mean to say is that the disorder from which he suffers affected his ability ... to be criminally responsible." Dr. Tanay further opined that the threats Dr. Hamilton received were a factor in his crimes.

Dr. Steven Miller, a psychologist, testified that although the defendant scored in the normal range in a psychological test (the Minnesota Multiphasic Personality Inventory), he was suffering from a pathological gambling disorder and a major depressive episode at the time he committed his crimes. Dr. Miller also reported that Dr. Hamilton exhibited suicidal tendencies. In Dr. Miller's opinion the gambling disorder had a significant impact on Dr. Hamilton's mental capacity. Dr. Miller also testified that Dr. Hamilton committed his crimes under the coercive impact of the threats he had received.

Dr. Allen Michael Ebert, a doctor of osteopathy specializing in addiction medicine,

1. Those sections provide:

"§ 5K2.13. *Diminished Capacity* (Policy Statement)

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

§ 5K2.12. *Coercion and Duress* (Policy Statement)

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence."

testified that he had treated Dr. Hamilton for his gambling addiction. He explained that because Dr. Hamilton was suffering from a significant gambling disorder and had been suicidal, he had been admitted to an institution in Florida where he received treatment for about thirty days. Dr. Ebert added that the defendant suffered from significant depression.

Dr. Hamilton testified that he started to gamble heavily in 1988. After he had incurred significant gambling debts, he said, he received threats of harm to himself and his family if he did not make weekly payments. Afraid that his wife would find out about his gambling problem and that his gambling associates might embarrass him professionally, he ran up his credit card debt, borrowed from his parents, and attempted to get bank loans. The threats escalated after he had exhausted his credit, and he then resorted to selling Tylenol containing codeine.

The district court sentenced Dr. Hamilton to imprisonment for 33 months to be followed by two years of supervised release. The sentence was at the bottom of the guideline range. The court declined to depart downward on diminished capacity grounds under Sentencing Guideline § 5K2.13. As far as diminished capacity was concerned, the court said,

"I think they [the Sentencing Commission] were talking about things such as a borderline mental intelligence capacity. I don't think they were talking about suffering from a compulsive gambling. So I would decline to apply a diminished mental capacity reduction because I don't think that's authorized by the guidelines."

The court declined to depart downward under § 5K2.12 because it concluded that there was no duress of a sort that would justify a departure under this section.

The court also denied a motion for bond pending appeal. During the hearing on this motion the district judge noted that he thought his decision not to depart downward was appealable, because he was ruling

"that the guidelines do not permit me to take that [diminished capacity and coercion] into account in the facts in this case because I do not think the facts in this case fit the guidelines on coercion and diminished capacity.... I am choosing not to exercise discretion because I find that there is no discretion, those guidelines don't fit."

## II

When a defendant appeals a sentence imposed under the Sentencing Guidelines, appellate review is restricted to cases where

"the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range ...; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a).

This court has held that

"where ... the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal under 18 U.S.C. § 3742(a)." *United States v. Davis*, 919 F.2d 1181, 1187 (6th Cir.1990).

See also, *United States v. Draper*, 888 F.2d 1100 (6th Cir.1989) ("[a] sentence which is within the Guidelines, and otherwise valid ... is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence"); *United States v. Gregory*, 932 F.2d 1167 (6th Cir. 1991) (no appeal lies to challenge degree of downward departure). We have found sentences subject to appellate review, however, when the district judge "incorrectly

believed that it could not consider [the] defendant's mitigating circumstances and exercise discretion to depart from the guidelines based upon such consideration." *United States v. Maddalena,* 893 F.2d 815, 817 (6th Cir.1989). It is on this exception that Dr. Hamilton relies in arguing that the district court's decision not to depart downward is reviewable in the case at bar.

The district court was well aware of its discretion to depart from the Guidelines under sections 5K2.13 and 5K2.12, but the court concluded that the facts in this case did not allow a departure under these sections. The court carefully considered the testimony of Dr. Hamilton and that of the three experts who testified on his behalf, but decided that the facts were not such as to justify findings of coercion or diminished mental capacity as those terms are used in the guidelines.

■ With regard to the support that various citizens had expressed for Dr. Hamilton, the district court said that

"if I could interpret the law differently so that I would not have to impose the sentence that I imposed, I probably would have given ... serious consideration to it. I made that very clear, that I consider myself bound by the law. And as I see it in this case, the law requires me to do what I have done. It's that simple."

A fair reading of the transcript leaves no room for doubt that the court knew that if it found that the defendant suffered from a significantly reduced mental capacity or had sold drugs because of serious coercion or duress, the court was authorized to depart from the guideline range. The court said "I do not think the facts in this case fit the guidelines on coercion and diminished capacity," and agreed with the Assistant United States Attorney when she suggested that "you would agree that if you had found the facts to support 5K2.12 and 13 that you did have the authority to depart downward under those grounds[.]" There

is also no reason to doubt that the district court was aware of its residual discretion to depart downward pursuant to § 5K2.0.[2]

■ The district court's conclusion that the type of mental state and coercion claimed by the defendant do not fit within sections 5K2.13 and 5K2.12 of the guidelines is a legal conclusion that is reviewable on appeal under 18 U.S.C. § 3742(a)(1). See *United States v. Poff,* 926 F.2d 588, 590–91 (7th Cir.1991) (en banc) (appellate court may review district court's conclusion that because the defendant committed a crime of violence, it was not authorized to depart downward pursuant to § 5K2.13), *cert. denied,* — U.S. —, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *United States v. Rosen,* 896 F.2d 789, 791 (3rd Cir.1990) (applying de novo standard of review to district court's conclusion that § 5K2.13 did not authorize a downward departure where the defendant was a compulsive gambler who committed a crime of violence). Having reviewed the district court's decision, we find no error in the conclusion that the circumstances of this case were not sufficient to justify invoking sections 5K2.13 and 5K2.12.

■ The defendant's gambling disorder did not cause him to suffer a "significantly reduced mental capacity" within the meaning of § 5K2.13. The defendant was able to absorb information in the usual way and to exercise the power of reason. He took to selling drugs illegally not because of any inability to understand his situation, but because he needed money. This is hardly an unusual motive—and the fact that Dr. Hamilton needed money to support his gambling habit puts him in no better position, as we see it, than he would have been in if he had needed money to support a drug habit or to finance any other indulgence.

■ Like the district court, we do not believe that the coercion to pay gambling debts represents the type of coercion that could warrant a downward departure pur-

---

2. Section 5K2.0 provides that "[c]ircumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts."

suant to § 5K2.12. It was immaterial to Dr. Hamilton's bookmakers how he raised the money, and they did not specifically coerce him to sell drugs. He had the option of reporting the threats he received to the authorities, of course, but he chose instead to engage in serious violations of the law.

We decline to remand the case for resentencing; the sentence imposed by the district court is AFFIRMED.