16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ivan Dale McCAIN, Defendant-Appellant.
 No. 92-00085.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Ivan Dale McCain appeals the sentence imposed by the district court following his guilty plea conviction of one count of aiding and abetting in the possession of unregistered firearms in violation of 26 U.S.C. Secs. 5861(d), 5845(a)(8), 5845(f), and 18 U.S.C. Sec. 2, and one count of aiding and abetting in the possession of unregistered firearms in violation of 26 U.S.C. Secs. 5861(d), 5845(a)(6), and 18 U.S.C. Sec. 2. On appeal, the issues presented are (1) whether this court has jurisdiction over defendant's appeal from the trial court's refusal to depart downward from the guideline sentence; and (2) assuming that this court has jurisdiction over defendant's appeal, whether defendant's family responsibilities are an extraordinary situation which warrants a downward departure under United States Sentencing Guidelines ("U.S.S.G.") Sec. 5H1.6, p.s. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On April 10, 1992, a complaint and arrest warrant were issued by a United States Magistrate Judge charging defendant with unlawful possession of a machine gun, a Title II weapon, in violation of 26 U.S.C. Secs. 5845(a)(6) and 5861(d)(f). Subsequently, on June 25, 1992, a federal grand jury returned a three-count indictment charging defendant with possession of two bombs in violation of 26 U.S.C. Secs. 5845(a)(8) and 5861(d) (count 1), with the unlawful possession of a machine gun in violation of 26 U.S.C. Secs. 5845(a)(6) and 5861(d) (count 2), and with manufacture of two bombs in violation of 26 U.S.C. Secs. 5845(f) and 5861(f) (count 3).
 
 
 3
 Defendant pled guilty on April 7, 1993, to counts 1 and 2 of the indictment pursuant to a written plea agreement. Defendant filed his response to the presentence investigation report on May 25, 1993, and he did not make a request for a departure or cite any facts warranting a departure at that time. Defendant was sentenced on June 4, 1993. At the sentencing hearing, it was undisputed by the parties that the guideline calculations were correct, that defendant's total offense level was 30, and his criminal history category was category III, which resulted in a guideline range of 121 to 151 months. However, because the statutory maximum for the offenses in counts 1 and 2 was 10 years, the district court sentenced defendant to 120 months imprisonment on counts 1 and 2 with the sentences to be served concurrently.[1] This timely appeal followed.
 
 B.
 
 4
 On February 20, 1992, Jeff Kitchen, a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, who was acting in an undercover capacity, met with defendant at his residence in Edwardsburg, Michigan. During their meeting, defendant sold 25 small PVC explosive devices (pipe bombs) to Special Agent Kitchen, and he also informed Agent Kitchen that he would convert certain types of rifles to fully automatic weapons for a fee.
 
 
 5
 Special Agent Kitchen again met with the defendant at his residence on March 25, 1992. At that time, he told defendant that he wanted an explosive device to blow up an automobile for the purpose of obtaining revenge, and defendant agreed to manufacture a PVC pipe bomb. Special Agent Kitchen observed the defendant removing a hinged box from the trunk of the defendant's automobile. The hinged box contained an explosive mixture, green fuses, tubes and PVC pipe. Defendant used the materials from the hinged box to manufacture a PVC pipe bomb which was seven and one-half inches long. This pipe bomb was made of one-half inch diameter PVC pipe, and defendant used a hot glue gun and an ice pick from his residence to aid in the completion of the device. Upon completing the pipe bomb, defendant sold it to Special Agent Kitchen for $15. On that same day, and also at the defendant's residence, Special Agent Kitchen examined a .22 L.R. caliber "Gevarm" French-made rifle which belonged to defendant. Defendant indicated that the firearm was fully automatic. When the "Gevarm" rifle was examined and field tested by Special Agent Kitchen, it did function as if it possessed the characteristics of a fully automatic weapon.[2]
 
 
 6
 On March 25, 1992, while still in an undercover capacity, Special Agent Kitchen met again with defendant at his residence in Edwardsburg, Michigan, and purchased a PVC pipe bomb from defendant for $40. In order for defendant to manufacture the device, it was necessary for Special Agent Kitchen to drive defendant to a Service Star Hardware store in Edwardsburg, Michigan. Defendant directed Special Agent Kitchen to purchase a seven and one-half inch length of two-inch diameter PVC pipe and two two-inch PVC end caps. After they returned to defendant's residence, Special Agent Kitchen observed defendant manufacture a PVC pipe bomb in a manner similar to that which has been previously described, except that in this instance, defendant used an electric drill to make a hole in one of the PVC end caps.
 
 II.
 A.
 
 7
 Defendant argues that this court should accept jurisdiction over his appeal based upon the trial court's refusal to depart downward from his guideline sentence. In this connection, defendant asserts that the district court's statements at his sentencing hearing show that the district court was not aware that it could depart downward from the guidelines based upon defendant's family situation under U.S.S.G. Sec. 5H1.6.[3]
 
 
 8
 Under 18 U.S.C. Sec. 3742(a), when a defendant appeals a sentence imposed under the Sentencing Guidelines, appellate review of such sentences is limited to cases where:
 
 
 9
 the sentence--
 
 
 10
 (1) was imposed in violation of law;
 
 
 11
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 12
 (3) is greater than the sentence specified in the applicable guideline range ...; or
 
 
 13
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 14
 18 U.S.C. Sec. 3742(a). Relying on the statute, this court has held that
 
 
 15
 where ... the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal under 18 U.S.C. Sec. 3742(a).
 
 
 16
 United States v. Hamilton, 949 F.2d 190, 192 (6th Cir.1991) (per curiam) (quoting United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990)); see also United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989) ("A sentence which is within the Guidelines, and otherwise valid, as is the case here, is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence.").
 
 
 17
 However, this court has found that a sentence is subject to appellate review when the district court " 'incorrectly believed that it could not consider [the] defendant's mitigating circumstances and exercise discretion to depart from the guidelines based upon such consideration.' " Hamilton, 949 F.2d at 192 (quoting United States v. Maddalena, 893 F.2d 815, 817 (6th Cir.1989)); see also United States v. Gaskill, 991 F.2d 82, 84 (3d Cir.1993) ("Although the decision to depart downward rests within the discretion of the sentencing judge and is not reviewable by an appellate court, we do have jurisdiction over an appeal when a district court refuses to depart downward because it believes it lacks authority to do so."); United States v. Mendoza-Lopez, 7 F.3d 1483, 1486 (10th Cir.1993) ("Where a district court in the exercise of its discretion decides not to depart from the Federal Sentencing Guidelines, an appellate court lacks jurisdiction to review that discretionary decision.... However, where the district court decides that it lacks the discretion to depart from the Guidelines, we review that decision de novo.... If the district court's ruling is unclear as to whether the court believed it had the discretion to depart, we must remand for clarification.").
 
 
 18
 In this case, defendant argues that the district court misunderstood the limits of its discretion to consider a downward departure for duress. Accordingly, defendant argues that the appeal falls within the second ground of Sec. 3742(a), and defendant has properly invoked the appellate jurisdiction of this court. See United States v. Isom, 992 F.2d 91, 94 (6th Cir.1993).
 
 B.
 
 19
 Defendant argues that the district court believed it lacked authority to depart downward in this case based upon the following statements by the district court:
 
 
 20
 THE COURT: And the probation office has identified no grounds for a downward departure in this case. So, although in the allocution you may argue within the guideline range of 121 to 151 [months], there doesn't appear to be, if there [are] no objections, any basis upon which I can go below 121 months. The defendant understands that?
 
 J.A. 68. The second statement is:
 
 21
 Since the promulgation of the sentencing guidelines, the court's discretion in the ability to fashion a sentence within the statutory minimum and maximums is constrained, as the parties to this proceeding understand. Although it's not within the court's discretion to reduce a sentence from the guideline range simply because the sentence would appear to be harsh or excessive unless there is a reason or a basis for a departure from the guidelines, it does appear useful to address the relative fairness of both the guideline range and the statutory maximum inasmuch as the statutory maximum and the guideline range seem to intersect for purposes of this sentence.
 
 
 22
 J.A. 81. Defendant asserts that the statements show "that although the sentencing court seemed to have some sense that it might be able to depart from the guidelines, the sentencing court did not seem to have an idea that it could depart from the guidelines for the reasons that [defendant] put forward, which were specifically, the severe problems in [defendant's] family and the orphaning of his children." Appellant's Brief at 3. However, in addition to the fact that defense counsel made only a limited, oblique reference to defendant's family problems at the sentencing hearing[4] and never expressly requested a downward departure based upon defendant's family problems, defendant has taken the district court's statements out of context.
 
 
 23
 The second statement made by the district court, which is identified above, continues as follows:
 
 
 24
 If this was an isolated incident of an individual making a pipe bomb for a lark to blow up a mailbox or something of that nature, then it would seem as if the statutory maximum and the guideline range in this matter would appear to be somewhat excessive. That does not appear to be the facts involved in this matter, however.
 
 
 25
 For purposes of this sentencing, it's important to keep in mind that we're not dealing with one instance and one destructive device. We are dealing in this sentence with the instance where Mr. McCain apparently made it known to an agent of the federal government that he was available and willing to make destructive devices and in fact made quite a number of destructive devices. The number referenced in the presentence report is 28, and apparently there were discussions about Mr. McCain's willingness or ability to make more had the government agent chosen to pursue that. These also were not innocent or small devices, some of them apparently being sufficient in size and explosive power to be able to blow up a car.
 
 
 26
 If this was a gun case where Mr. McCain was being sentenced for the possession of one weapon only, as is described in Count 2, and if Mr. McCain had no prior criminal history, it appears as if the guideline range for purposes of this sentencing could perhaps, with acceptance of responsibility, go as low as some three years. So, I think it's important, Mr. McCain, for you to understand for purposes of this sentencing that the harsh impact of the sentencing guidelines and the statutory maximum in this case are almost exclusively driven by the fact that the firearms at issue here were not simply unregistered guns, but they were destructive--they were pipe bombs. It's almost completely driven, as well, not only by the nature of those firearms, the destructive device being a pipe bomb itself, but also by the number of those destructive devices and your purported knowledge of their use in the commission of a felony.
 
 
 27
 Additionally, had Mr. McCain not had a prior criminal record, it would appear that even with this total offense level calculation, that the sentencing range would be reduced by at least a couple years as well. So, we have the combination here of the number of firearms; the nature of the firearms being pipe bombs; the knowledge of Mr. McCain's use of one or more of those pipe bombs; and his prior criminal history, which I would describe as some 15 years of petty criminal offenses, that add up to fairly large numbers for purposes of the statutory maximum and the sentencing guidelines.
 
 
 28
 I would also note, Mr. McCain, what troubles me in this matter is that your criminal involvement does not seem to be limited to a number of minor instances when you were young that could be apparently attributed to youthful indiscretion or lack of maturity and judgment. They have continued right up through 1992 where there are two additional offenses in 1992 that apparently occurred not too long before the commission of this particular crime. This would suggest to the court, Mr. McCain, that whatever might have caused your earlier criminal involvement hasn't changed, and at this point, notwithstanding the fact that you were responsible for three children, you did not seem inclined to change your respect for the law or for authority.
 
 
 29
 So, for those reasons it does not appear to this court that a sentence in the amount of the statutory maximum would be unfair.... A sentence of incarceration in this matter of 120 months on each count to be served concurrently seems to be fair and appropriate in either instance....
 
 
 30
 J.A. 81-84.
 
 
 31
 As the above statement by the district court shows, the district court was aware of its ability to depart downward, despite defendant's failure to either request a downward departure or bring U.S.S.G. Sec. 5H6.1 to the court's attention. Rather, after discussing all of the circumstances surrounding the case, the district court stated that it believed a 120-month sentence, the statutory maximum, would be fair. Thus, the record amply supports the conclusion that the district court was aware of its ability to depart downward. Nevertheless, the district court found that the circumstances of the case, especially the number and explosive power of the pipe bombs manufactured by defendant, precluded a downward departure. Therefore, as the district court properly computed the guideline range, was not unaware of its discretion to depart downward from the guideline range, and did not impose defendant's sentence in violation of law or as a result of an incorrect application of the guidelines, its failure to depart downward is not cognizable on appeal. United States v. Chalkias, 971 F.2d 1206, 1218 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992); United States v. Meyers, 952 F.2d 914, 920 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992).
 
 III.
 
 32
 For the reasons stated, this appeal is DISMISSED for lack of jurisdiction.
 
 
 
 [1]
 We note that the record reveals that defendant did not file any written brief or memorandum prior to sentencing requesting a downward departure, and he did not file written objections to the presentence investigation report requesting a downward departure. At the sentencing hearing, defendant's counsel made a limited reference to the defendant's family responsibilities; however, counsel never formally requested a downward departure nor did counsel mention U.S.S.G. Sec. 5H1.6
 
 
 [2]
 Following defendant's arrest in Arkansas, the ATF seized the "Gevarm" rifle. Testing by the ATF revealed that the rifle was fully automatic
 
 
 [3]
 Defendant's family situation is described in the presentence investigation report. Defendant and his wife, the late Mary Carol Templeton, were married on October 7, 1972. They had three children: Joshua Levi McCain, born July 19, 1978; Amber Lacey McCain, born July 10, 1985; and Felicity Nichole McCain, born March 20, 1987. Mrs. McCain died at the age of 37 on February 21, 1993, due to a cerebral hemorrhage. Defendant's wife and children resided in Arkansas. Due to his pending incarceration on the charges involved in this case, defendant returned to Arkansas and arranged for his sister-in-law, Cecilia Tilley, to adopt his children, based upon his recognition that he would be unable to care for them since he was facing long-term incarceration. J.A. 32-33
 
 
 [4]
 At sentencing the only reference to defendant's family situation was the following statement by defense counsel:
 I think, secondly, [the probation officer] has done a good job in the presentence report of bringing out some of the personal tragedy that's occurred to Mr. McCain. I think the thing that occurs to me the most is the death [of] his wife, which happened rather recently while he was incarcerated, and the fact that these children are probably going to be adopted or are in the process of being adopted by a family member. I think that is something that is serious and certainly something that can affect his personal demeanor.
 J.A. 73.
 Defendant's only statement in this regard was:
 I was a good husband and father. I'm no longer either since the death of my wife in February and the subsequent adoption of my children. I'm no longer active in either capacity.
 My children need me very much to fulfill a parental figure. They do not need to be orphaned because of this. I have stolen nothing nor raped anyone nor done anything detrimental to any living soul. I'm guilty by proxy because I was there.
 My Bible tells me that I'm put through trials and tribulations to build character and glorify God. This may indeed build character, but I can see no way my children's suffering can glorify God ... The disintegration of my family I would like to avoid at any cost.
 J.A. 78.