UNITED STATES of America

v.

Robert CARUCCI, Defendant.

No. 98 CR. 448(JSR).

United States District Court,
S.D. New York.

Jan. 14, 1999.

Nicholas Gravante, Jr., Harlan A. Levy, Jessica M. Tourk, New York, NY, for defendant

Rose Gill, Asst.U.S.Atty., for government.

*OPINION AND ORDER*

RAKOFF, District Judge.

On May 19, 1998, Robert Carucci, formerly a floor broker at the New York Stock Exchange, pleaded guilty to knowingly engaging in unlawful securities trading in violation of the rules of the Exchange (and of the Securities and Exchange Commission) over a period of more than four years between 1993 and early 1998. Prior to sentencing, Carucci moved for a downward departure under Section 5K2 .13 of the Sentencing Guidelines, a "policy statement" (*see* 28 U.S.C. § 994(a)(2)) that provides in pertinent part that "A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." Specifically, Carucci claims he committed his crimes while suffering from a significantly diminished mental capacity attributable to a compulsive gambling disorder.

After receipt of the parties' written submissions, the Court convened a two-day evidentiary hearing, followed by still further briefing. Having now reviewed the entire record, the Court denies defendant's motion, for the following reasons.

Compulsive gambling is a real and significant psychological disorder (and social problem), from which Mr. Carucci undoubtedly suffered.[1] In the years preceding his entry into criminal activity, Mr. Carucci gambled immodestly and inordinately, lost $1 million or more in the process, and, in consequence, lost his spouse, his financial security, and his self-respect. Thus, if Carucci were charged with, say, engaging in unlawful gambling, his claim for a diminished capacity departure would be colorable, for there is substantial evidence that, when it came to gambling, his ability to exercise either reason or control was significantly impaired. *See U.S. Sentencing Guidelines Manual* § 5K2.13, Application Note (1998)("For purposes of this policy statement—'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to

1. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 615–618 (4th ed.1994). While the defendant's impressive expert, Dr. Sheila B. Blume, was particularly eloquent in describing the pathology of compulsive gambling, the Government's expert, Dr. Robert H. Berger, did not dispute that Mr. Carucci suffered from some such disorder.

(A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."). *See also United States v. McBroom*, 124 F.3d 533 (3d Cir.1997).

But a compulsive gambler is not, *a fortiori*, a compulsive illegal trader. While defendant's large gambling losses may have sufficiently exceeded his otherwise substantial income as to create an incentive to engage in lucrative unlawful trading, economic pressure hardly equates with diminished mental capacity. Accordingly, defendant, although alleging that compulsive gambling provided an economic incentive for his crime, goes further and asserts that what finally pushed him over the edge were the same psychotic demons that led to his compulsive gambling and that here found expression in the allure of illegal trading with its high stakes and high risks—a form of "substitute gambling" he could neither resist nor renounce.

The Court finds, however, that this hypothesized psychological state is insufficiently supported by the evidence here adduced.[2] When invited by his colleagues to participate in this illegal trading, defendant, though recognizing the wrongfulness of such conduct, yielded to temptation without anything like a Dostoevskian struggle. He knew, the Court finds, that it was easy money (roughly $10,000 or more a month), that he was unlikely to be caught, and that his activity, even if detected, might be "explained" away (as defendant attempted to do when, as now admitted, he purposely tried to mislead the Government agents who questioned him in November 1997).

For more than four years, while his gambling activity waxed and waned and his economic and personal vicissitudes came and went, Mr. Carucci continued with his calculated, sophisticated criminal activity, free of any outward sign of diminished mental capacity. Although the psychological construct

proffered by the defense is sufficiently flexible to accommodate even such calculated misconduct,[3] the much simpler explanation is that defendant, having both the motive and opportunity to cheat and steal, freely chose to do so. The Court is not persuaded to the contrary.

Accordingly, defendant's departure motion is denied.

SO ORDERED.

---

2. As previously held, *see* Transcript, 12/15/98, at 13–14, the defendant has the burden of proving a diminished capacity departure, by a preponderance of the evidence. *See also United States v. McBroom*, 991 F.Supp. 445 (D.N.J.1998).

3. Put differently, the construct suffers from being unfalsifiable, and, therefore, unverifiable. *See* K. Popper, *Conjectures and Refutations: The Growth of Scientific Knowledge* 37 (5th ed.1989). *Cf. Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).