Thomason testified about his own experiences with a gambling disorder, his participation in GA for the past twelve years, and his role as a chairperson of one of the weekly GA meetings. He also started three GA groups and read literature in "the field of gambling and pathological gambling." Additionally, Thomason often spoke with Sadolsky about Sadolsky's gambling problem, although he was not Sadolsky's official "sponsor" in the GA program.

During the sentencing hearing, Sadolsky also cited the Diagnostic and Statistical Manual of Mental Disorders, "which is known as the standard text of the American Psychiatric Association." That manual lists pathological gambling as an impulse control disorder. The same reference was relied upon by the Ninth Circuit in *Cantu*, 12 F.3d at 1512-13, which found that emotional disorders, rather than just organic disorders, qualified as SRMCs for the purposes of granting a downward departure under § 5K2.13.

Although testimony from a medically trained professional who was qualified to diagnose gambling disorders would have been preferable, *see, e.g.*, *Hamilton,* 949 F.2d at 191 (defendant presented testimony from a psychiatrist and a psychologist in support of a downward departure under § 5K2.13 on the grounds of a gambling disorder), the trial court did not err in finding that Sadolsky was a compulsive gambler who qualified for a downward departure under § 5K2.13 based upon Thomason's testimony, the medical reference evidence, and the lack of contradictory evidence. *See also Cantu*, 12 F.3d at 1511 ("it is unnecessary, for example, for a defendant who requests a departure under § 5K2.13 to undergo a mental health examination of the type used in determining guilt or innocence.").

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0410P (6th Cir.)
File Name: 00a0410p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

        *v.*                                          No. 99-5780

MICHAEL SADOLSKY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00168—John G. Heyburn II, District Judge.

Argued: August 3, 2000

Decided and Filed: December 11, 2000

Before: SUHRHEINRICH and DAUGHTREY, Circuit
Judges; WEBER, District Judge.[*]

———————————

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**COUNSEL**

---

**ARGUED:** Marisa J. Ford, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Scott C. Cox, Louisville, Kentucky, for Appellee. **ON BRIEF:** Marisa J. Ford, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Scott C. Cox, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. Appellant United States ("Government") appeals the sentence imposed upon Defendant-Appellee Michael Sadolsky ("Sadolsky") following his plea of guilty to computer fraud in violation of 18 U.S.C. § 1030(a)(4). At issue is whether the district court erred in granting a two-level downward departure under § 5K2.13 of the United States Sentencing Guideline based on Defendant's alleged gambling disorder. We **AFFIRM**.

**I.**

Sadolsky was a regional carpet manager for Sears Roebuck & Co. ("Sears"). Over a period of six months, he accessed Sears' computers on thirteen occasions and fraudulently credited amounts for "returned merchandise" to his personal credit card, resulting in a loss to Sears of $39,477.91. His activities came to Sears' attention after he executed a fraudulent credit transaction to his Visa account using Sears' cash registers and another salesperson's associate number. Sears reported the fraud to the U.S. Secret Service office in Louisville. When Sadolsky was interviewed by the Secret Service, he admitted that he defrauded Sears to pay off his gambling debts, which were approximately $30,000 in January 1998.

"the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case"). U.S.S.G. Ch 1. Pt. A § 4(b), p.s. We are obliged to follow the Sentencing Commission's directives.

In short, the district court's two-level downward departure under § 5K2.13 was not an abuse of discretion.

**B.**

The district court's finding that Sadolsky had a gambling problem that qualified as an SRMC was not clearly erroneous. "[W]hen a defendant seeks to establish facts which would lead to a sentence reduction under the Guidelines, he shoulders the burden of proving those facts by a preponderance of the evidence." *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir. 1990). The Government contends that Sadolsky had the burden of demonstrating that (1) he suffered from an SRMC, (2) at the time he committed the fraud, and (3) the diminished capacity was a contributing factor in his committing the fraud.[6]

The district court based its finding on testimony by Sadolsky, his wife, and Thomason. While Sadolsky and his wife are clearly lay witnesses, Sadolsky argues that Thomason was an expert witness qualified to testify to Sadolsky's gambling disorder. Although Thomason was never formally proffered as an expert witness, the federal rules of evidence do not apply in sentencing hearings. *See* U.S.S.G. § 6A1.3 ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

---

[6]The Government fails to cite any authority for this articulation of Sadolsky's burden. However, at least one circuit has articulated the defendant's burden in the way asserted by the Government. *See United States v. Benson*, No. 93-5204, 1993 WL 385213, at *5 (4th Cir. Sept. 30, 1993) (unpublished per curiam).

be outside the applicable range"); as well as drug or alcohol dependence abuse, *see* § 5KH1.4.p.s. (stating that "[d]rug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines"), as bases for departure.[5] However, in § 5K2.13, the Sentencing Commission specifically excluded as bases for departure two volitional disorders, "the voluntary use of drugs or other intoxicants," § 5K2.13, and clearly indicated in the accompanying application note that volitional impairments provide a proper basis for departure. Therefore it must be presumed that the Sentencing Commission did not intend to categorically exclude gambling or other volitional disorders as qualifying for downward departures.

Moreover, a district court may properly consider any mitigating factor not proscribed or adequately addressed by the Guidelines. *See Koon*, 518 U.S. at 92 ("Congress allows district courts to depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'") (quoting 18 U.S.C. § 3553(b)); *see also United States v. Coleman*, 188 F.3d 354, 359 (6th Cir. 1999) (en banc) ("Simply because a court has not directly ruled on the factor at issue does not excuse the district court from considering the factor as a potential basis for a downward departure."). Apart from those factors that may not be grounds for a departure (*i.e.*, race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol abuse),

---

[5] For an excellent discussion of why allowing departures based on volitional impairment frustrates Congress's objective for the Guidelines, see Carlos M. Pelayo, *"Give Me a Break! I Couldn't Help Myself !"?: Rejecting Volitional Impairment as a Basis for Departure under Federal Sentencing Guidelines Section 5K2.13*, 147 U. Pa. L. Rev. 729 (Jan. 1999) (arguing that, when properly analyzed, most cases involving volitional impairment actually involve a perfectly functioning will and voluntary action, and that as long as the defendant is not irrational, unmitigated punishment is morally appropriate).

On December 29, 1998, Sadolsky was charged in a seven count felony information with violations of 18 U.S.C. § 1030. He waived indictment by the federal grand jury and pled guilty to the seven counts pursuant to a Rule 11(e)(1)(B) plea agreement ("PA").

The parties agreed that: (1) Sadolsky's base offense level under U.S.S.G. § 2F1.1(a) was a "6"; (2) his offense level should be increased by four levels under U.S.S.G. § 2F.1.1(b)(1)(E) for a loss of more than $20,000, and (3) the offense level should be increased by two levels under U.S.S.G. § 2F1.1(b)(2)(A) for "more than minimal planning."[1] This resulted in a total offense level of "12."

Under the terms of the PA, the parties left several issues to be argued at sentencing, including Sadolsky's request for a one-level downward departure under U.S.S.G. § 5K2.13 on the grounds that he committed the offense while suffering from a significantly reduced mental capacity ("SRMC") as a result of his gambling problem. The Government opposed this request.

Sadolsky was scheduled to be sentenced on May 7, 1999, and a Presentence Investigation Report ("PSR") was prepared. The PSR indicated that Sadolsky's criminal history category was "I", and that the Government's request for a two-level adjustment for abuse of a position of trust was applicable. The PSR also discussed the information reported by Sadolsky regarding his "gambling compulsion," but did not make any recommendation regarding a downward departure pursuant to U.S.S.G. § 5K2.13.

Sadolsky called three witnesses at sentencing to establish an SRMC based on his compulsive gambling, including himself, his wife, and William P. Thomason, Jr. ("Thomason"), a member of Gamblers Anonymous ("GA"). The Government argued that when a defendant is convicted

---

[1] The November 1, 1998 edition of the Guidelines Manual was used in this case.

under 18 U.S.C. § 1030(a)(4), "the minimum guideline sentence, notwithstanding any other adjustment, shall be six months imprisonment." U.S.S.G. § 2F1.1(c)(1). The trial court subsequently granted a two-level downward departure pursuant to § 5K2.13, which resulted in an offense level of "10" and a sentencing range of six to twelve months of imprisonment. Sadolsky was then sentenced to five years of probation, with a special condition of six months of home detention. He was also ordered to pay restitution to Sears in the amount of $39,477.91 and a $700 assessment. Had the downward departure not been granted, Sadolsky's offense level would have been a "12" resulting in a sentencing range of ten to sixteen months of imprisonment. The Government timely appeals.

## II.

Section 5K2.13 of the United States Sentencing Guidelines reads:

> Diminished Capacity (Policy Statement): A sentence below the applicable guideline range may be warranted *if the defendant committed the offense while suffering from a significantly reduced mental capacity*. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

United States Sentencing Commission, *Guidelines Manual*, § 5K2.13 (Nov. 1998) (emphasis added).

The district court granted the departure under § 5K2.13 after finding that Sadolsky's "capacity was sufficiently

fraud,[4] the two-point reduction is not inconsistent with the guideline provision.

A rule distinguishing between SRMCs that *cause* the behavior that constitutes the crime and SRMCs that *motivate* the behavior that constitutes the crime could lead to arbitrary results. For example, under the Government's theory, if someone with an eating disorder stole food, he or she would be entitled to a downward departure under § 5K2.13. If, however, that same person stole money to buy food, he or she would not be entitled to a downward departure. In the latter situation, the link between the crime, stealing money to buy food, and the SRMC, an eating disorder, is no longer technically direct. Nonetheless, no one can dispute that the eating disorder is the driving force behind the crime. Yet under the Government's theory, the two individuals would be treated differently based on a nebulous distinction between a volitional impairment that causes the conduct that constitutes the crime and a volitional impairment that explains the motive for the ultimate crime. This treatment is at odds with the Sentencing Guidelines's goal of uniformity of sentencing. More importantly, a bright line rule would undermine not only the district court's discretion, but also the very purpose of § 5K2.13 – to mitigate the sentence of one who suffers from a diminished mental capacity.

The 1998 Amendment is arguably inconsistent with the Guidelines as a whole, which generally prevent consideration of mental and emotional conditions, s*ee* U.S.S.G. § 5H1.3, p.s. (stating that "mental and emotional conditions are not ordinarily relevant in determining whether a sentence should

---

[4] The only case supporting the Government's causation position is a district court federal habeas case which was decided prior to the 1998 Amendment. *See Venezia v. United States*, 884 F. Supp. 919, 926 (D.N.J. 1995) ("It is true that [the petitioner's] gambling losses resulted in large debts, and that his indebtedness provided additional motivation to continue and expand his fraudulent operations. A more compelling motive to defraud is not the kind of direct causation between mental capacity and commission of the offense envisioned by § 5K2.13.").

been arrested for gambling, rather than for fraud.   More precisely,  the Government argues that "[t]he question is whether this new volitional test requires that the defendant be unable to control the behavior that *constitutes* the crime, or whether it can be satisfied by an inability to control behavior that provides the *motive* for the crime."  The Government fails to cite any authority to support its contention, however, and merely notes that the compulsion matched the offense in *McBroom,* wherein the Third Circuit granted a downward departure for a defendant convicted for receiving child pornography based on the sexual abuse he suffered as a child.

The Guideline language does not support the Government's argument.    Section 5K2.13 does not distinguish between SRMCs that explain the behavior that *constituted* the crime charged and SRMCs that explain the behavior that *motivated* the crime.  In other words, § 5K2.13 does not require a direct causal link between the SRMC and the crime charged.  Other courts have reached a similar conclusion, granting downward departures under § 5K2.13 to defendants who are compulsive gamblers for crimes other than, but motivated by, a gambling compulsion.  *See, e.g.*, *United States v. Harris*,  No. SR192 Cr. 455, 1994 WL 683429, at *4-5 (S.D.N.Y. Dec. 6, 1994) (citing two unpublished district court cases in the Second Circuit where compulsive gamblers were granted downward departures for crimes of embezzlement and mail theft to fund their gambling expenses); *see also McBroom*, 124 F.3d at 548 n.14 (an SRMC "must be a *contributing* cause of the offense, but need not be the *sole* cause."); *United States v. Cantu*, 12 F.3d 1506, 1515 (9th Cir. 1993) (stating that "other circuits are unanimous in holding that the disorder need be only a contributing cause, not a but-for cause or a sole cause, of the offense").  Thus, because Sadolsky's  gambling disorder is a likely cause of his criminal behavior, given that he had already "maxed out" his own credit line before resorting to

impaired to be able to control this particular kind of behavior."  It stated:

> It seems as though the essence of this provision . . . is a diminished capacity to control a certain kind of illegal behavior.  I think [it has] got to involve something which can be corrected in some way or another, otherwise it wouldn't make sense to reduce the sentence because then it could go — it could continue to go uncorrected; and that the degree of diminished capacity must be so great that even though one knows it's wrong at some level, they still can't stop the behavior.  I'm not sure how — obviously that could involve a whole lot of factors from how great the diminished capacity is to how bad the behavior is to how involved the behavior is, whether it's connected to other bad things as well.

On appeal the Government argues that the district court erred in granting a two-level downward departure pursuant to U.S.S.G. § 5K2.13 based on Sadolsky's gambling problem.[2] The Government makes two related arguments.   First, it argues that the lower court committed a legal error in holding that a gambling disorder is a permissible basis for departure under § 5K2.13.  Second, the Government contends that the district court erred in finding that Sadolsky proved by a preponderance of the evidence that he was entitled to a departure for diminished capacity.  We review for an abuse of discretion.  *See Koon v. United States*, 518 U.S. 81, 100 (1996) (holding that "[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions").

### A.

In *United States v. Hamilton*, 949 F.2d 190 (6th Cir. 1991) (per curiam), we held that a compulsive gambler who pled guilty to possession of controlled substances with intent to

---

[2] The Government does not argue that Sadolsky's request for more than a one-level downward departure violates the PA.

distribute did not qualify for a downward departure under § 5K2.13 because he "was able to absorb information in the usual way and to exercise the power of reason. He took to selling drugs illegally not because of any inability to understand his situation, but because he needed money." *Id.* at 193.

The Government would easily prevail if *Hamilton* were still the law of this Circuit. However, in 1998, the Sentencing Commission added the following application note defining the previously undefined term "significantly reduced mental capacity."

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

U.S.S.G. § 5K2.13, comment. (n.1) (1998). The Commission described its definition of an SRMC as follows:

> The amendment . . . defines "significantly reduced mental capacity" in accord with the decision in *United States v. McBroom*, 124 F.3d 533 (3d Cir. 1997). The *McBroom* court concluded that "significantly reduced mental capacity" included both cognitive impairments (*i.e.*, an inability to understand the wrongfulness of the conduct or to exercise the power of reason) and volitional impairments (*i.e.*, an inability to control behavior that the person knows is wrongful). The application note specifically includes both types of impairments in the definition of significantly reduced mental capacity.

U.S.S.G. App. C § 5K2.13, amendment 583 (1998) (internal citations omitted).

*Hamilton* focused on the cognitive grounds for an SRMC. However, the amendment to § 5K2.13 expanded the definition of an SRMC to include volitional impairments.

Moreover, the Third Circuit's decision in *McBroom*, which was adopted by that 1998 Amendment, declined to follow our decision in *Hamilton* and its rule limiting SRMCs to cognitive deficiencies. *See McBroom*, 124 F.3d at 547; *see also United States v. Wheeler*, No. 97-3632, 1998 WL 808225, at * 4 (6th Cir. Nov. 13, 1998) (unpublished per curiam) (noting that *McBroom* questioned the holding in *Hamilton* by finding that "the phrase 'mental capacity,' as used in U.S.S.G. § 5K2.13, had both a volitional and a cognitive component."). Accordingly, our decision in *Hamilton* is no longer good law after the 1998 Amendment.[3]

The Government contends that Sadolsky's gambling problem would only justify a downward departure if he had

---

[3]Since the 1998 Amendment, there have been no circuit cases applying the new definition of an SRMC to a defendant with a gambling disorder to support a downward departure under § 5K2.13. However, one district court has discussed § 5K2.13 in light of *McBroom*'s holding that volitional impairments qualified as SRMCs and noted in dicta that the Guidelines did not foreclose consideration of gambling as grounds for a downward departure. *See United States v. Iaconetti*, 59 F. Supp. 2d 139, 145-46 n.4 (D. Mass. 1999). On the other hand, another district court suggested that the link between the compulsion and the crime must be direct, but ultimately ruled that the evidence did not support the defendant's "hypothesized psychological state." *United States v. Carucci*, 33 F. Supp. 2d 302, 303 (S.D.N.Y. 1999) (stating that although compulsive gambling is a real and significant psychological disorder "a compulsive gambler is not, a fortiori, a compulsive illegal trader"). *See also United States v. Vitale*, 159 F.3d 810, 816 (3d Cir. 1998) (holding that the district court did not err in declining to grant a downward departure based on the defendant's compulsion to purchase antique clocks; discussing § 5K2.13 in light of *McBroom* and noting that "gambling and intoxication do not ordinarily warrant a diminished capacity reduction").

Prior to the 1998 Amendment, a number of district courts granted downward departures under § 5K2.13. *See, e.g., United States v. Harris*, No. S192 Cr. 455, 1994 WL 683429, at *3-4 (S.D.N.Y. Dec. 6, 1994) ("[g]iven the recognition by the American Psychiatric Association of pathological gambling as an 'impulse control disorder,' I am not prepared to exclude that disorder, as a matter of law, from consideration under the diminished capacity provisions of § 5K2.13" and citing two unpublished district court cases in the Second Circuit granting downward departures for gamblers).