UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Keithley JOHNSON, M.D., Defendant–Appellant, Cross–Appellee.

Nos. 94–1743, 94–1843.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1995.

Decided Nov. 20, 1995.*

---

* This decision was originally issued as an "unpublished decision" filed on November 20, 1995. On December 15, 1995, the court designated the opinion as one recommended for full-text publication.

541

Jonathan Tukel (argued and briefed), Office of U.S. Atty., Detroit, MI, for plaintiff-appellee.

Herbert A. Jordan (briefed), Detroit, MI, Derrick A. Carter (argued), School of Law Library, Documents Dept., Valparaiso, IN, for defendant-appellant.

Before: KENNEDY and MOORE, Circuit Judges; JOHNSTONE, District Judge.**

KENNEDY, Circuit Judge.

A jury convicted defendant Keithley Johnson on nine counts of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), and four counts of mail fraud in violation of 18 U.S.C. § 1341. Defendant now appeals, claiming that there was insufficient evidence to support his convictions and that the District Court erroneously admitted hearsay evidence. The government cross-appeals defendant's sentence. For the following reasons, we AFFIRM defendant's convictions but REMAND for resentencing.

I.

On August 12, 1993 defendant Keithley Johnson, a medical doctor, was named in 58 counts of a 111 count indictment charging him and his medical partner, Dr. Tejinder Uppal, with various crimes. Following a lengthy jury trial, defendant was convicted on nine counts of distributing pharmaceuticals outside the course of professional practice and for no legitimate purpose, in violation of 21 U.S.C. § 841(a)(1). Defendant was

** The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

also convicted on four counts of mail fraud, in violation of 18 U.S.C. § 1341.

The government's theory at trial was that Drs. Johnson and Uppal, who together ran the Neighborhood Health Clinic ("Clinic"), were engaged in the distribution of controlled substances and illegal medical billing practices. To prove the distribution charges, the government presented testimony from several witnesses, including former employees and "patients" of the Clinic, and an undercover Michigan state police officer who investigated the Clinic. The government also submitted into evidence audiotapes of defendant offering the officer prescriptions for Schedule II narcotics upon her request and without a proper medical examination.

Defendant's mail fraud convictions arose out of his participation in a scheme that defrauded Electronic Data Systems ("EDS"), Dr. Uppal's medical insurer. On a number of occasions, Dr. Uppal treated her own medical conditions. EDS, however, did not reimburse its insureds for costs associated with self treatment. In order to secure payment from EDS, invoices were submitted to EDS through the mail which made it appear as if defendant had been the treating physician when, in fact, Dr. Uppal had treated herself. As a result, EDS paid these claims. Evidence of this scheme consisted of testimony from former employees of the Clinic to the effect that Dr. Uppal was never treated by defendant. The government also submitted documentary evidence showing that defendant was represented as the treating physician on forms submitted to EDS for repayment.

In January of 1994, defendant was convicted on both the narcotics and mail fraud charges. The District Court sentenced defendant under United States Sentencing Guideline (USSG) § 2D1.1. After adding two levels for the multiple count grouping adjustment, the District Court determined defendant's offense level to be 14. With a criminal history category of I, defendant's sentencing range was between fifteen and twenty-one months. The District Court rejected the government's request to adjust the offense level for use of "a special skill" under USSG § 3B1.3. Further, based on defendant's "medical problems," the District Court departed downward from the guideline range pursuant to § 5H1.4 and sentenced defendant to twelve months in a community treatment center, to be followed by three years of supervised release, and a $40,000 fine.

## II. Sufficiency of the Evidence

We first address defendant's claim that there was insufficient evidence to support his convictions. A defendant claiming insufficiency of the evidence bears a heavy burden. *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994). "When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Riffe*, 28 F.3d 565, 567 (6th Cir.1994)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Applying this standard, we uphold defendant's convictions.

### A.

In order to obtain a conviction under 21 U.S.C. § 841(a)(1) against a licensed physician such as defendant, the government must show: "(1) That defendant distributed a controlled substance; (2) That he acted intentionally or knowingly; and (3) That defendant prescribed the drug without a legitimate medical purpose and outside the course of professional practice." *United States v. Varma*, 691 F.2d 460, 462 (10th Cir.1982). The gravamen of defendant's argument is that he prescribed the drugs in "good faith" for a legitimate medical purpose and not outside the course of professional practice.

Defendant's argument is not well taken. The government's evidence included (1) a police audiotape and testimony from former "patients," indicating that defendant prescribed narcotics upon request and without medical examinations; (2) testimony that defendant, in fear of prosecution, took precautions in prescribing narcotics; (3) testimony

that the Clinic was a "hang-out" for "patients" where they would discuss the narcotics they were going to receive and trade narcotics among themselves; and (4) testimony that defendant would exchange prescriptions with "patients" for construction work on his property. This evidence, if believed, could establish beyond a reasonable doubt that defendant prescribed narcotics without a legitimate medical purpose and outside the course of professional practice. *See United States v. Moore,* 423 U.S. 122, 143, 96 S.Ct. 335, 345–46, 46 L.Ed.2d 333 (1975); *United States v. Kirk,* 584 F.2d 773, 777–81 (6th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978).

#### B.

■ To obtain a conviction for mail fraud under 18 U.S.C. § 1341, "the government must prove: (1) the existence of a scheme to defraud, (2) which involves use of the mail ..., (3) for the purpose of executing the scheme." *United States v. Merklinger,* 16 F.3d 670, 678 (6th Cir.1994) (citations omitted). Here, defendant argues that the evidence is insufficient to prove beyond a reasonable doubt that he had knowledge of the illicit billing scheme.

■ Again, defendant's argument is not well taken. There is sufficient evidence to support findings that defendant never treated Dr. Uppal, that defendant was listed as the treating physician on EDS insurance forms, and that these forms were submitted through the United States mail. Finally, documentary evidence indicating that defendant signed and initialled forms that fraudulently represented himself as Dr. Uppal's treating physician makes clear that he was involved in the scheme to defraud.

### III. Hearsay

■ Defendant next argues that the District Court erroneously admitted hearsay evidence. At trial, a former employee of the Clinic, Tina Chapman, testified that pharmacies would telephone the Clinic about prescriptions written by defendant. Chapman testified that she told Dr. Uppal of these phone calls, that they made Dr. Uppal "extremely mad," and that Dr. Uppal stated that she "would speak with Dr. Johnson about it." Chapman further testified that on one occasion she heard Dr. Uppal tell defendant over the telephone that "he was going to have to stop writing prescriptions like that." Defendant's attorney objected on hearsay grounds. The District Court overruled the objection. We review this decision *de novo. United States v. Fountain,* 2 F.3d 656, 668 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 573 (1993).

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c). Chapman's testimony of the telephone conversation she overheard is not hearsay because it was not offered to prove the truth of the matter asserted. Rather, as the government argues, this testimony is evidence of defendant's knowledge that he was prescribing medication without a legitimate medical purpose and outside the course of professional practice. As defendant's state of mind is an element of the offense, this evidence is relevant.

■ We agree with defendant that Chapman's testimony as to her conversation with Dr. Uppal was hearsay as to Dr. Johnson. However, in light of Chapman's testimony that Dr. Uppal did in fact speak with defendant about the telephone calls from concerned pharmacies, admission of this testimony was harmless error. *See Fountain,* 2 F.3d at 669.

### IV.

On cross appeal, the government argues that the District Court erred in refusing to adjust defendant's base offense level for use of a special skill pursuant to § 3B1.3. Further, the government argues that the District Court erred in departing downward from the guideline range under § 5H1.4 because the defendant never established that he· had medical problems sufficient to warrant departure. We consider these arguments in turn.

## A.

USSG § 3B1.3 states, in pertinent part:

If the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

The commentary states: " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists· and demolition experts." USSG § 3B1.3, comment (n. 2).

■ The District Court declined to apply this enhancement because it determined that the special skill was implicit in the offense of conviction. In the words of the District Court, "nobody but a doctor is going to prescribe prescriptions for other than a legitimate medical purpose." We review this interpretation of the sentencing guidelines *de novo, United States v. Watkins*, 994 F.2d 1192, 1195 (6th Cir.1993), and now reverse.

■ Section 3B1.3 requires that we look at the base offense level and the specific offense characteristics assigned by the guidelines to the crimes of conviction to see if use of a special skill has already been taken into account. *See United States v. Levy*, 992 F.2d 1081, 1084 (10th Cir.1993). Defendant was sentenced under § 2D1.1, which dictates a base offense level for defendant's narcotics conviction based solely on the quantity of drugs involved. Section 2D1.1 does not consider whether the offense was committed by a doctor or anyone else. Thus, defendant's use of a special skill was not taken into account by § 2D1.1 and should be considered by the District Court, through application of guideline § 3B1.3, on remand. Nor does the offense of conviction apply only to doctors. Anyone can be found guilty of violating 21 U.S.C. § 841(a)(1) by distributing pharmaceuticals. Doctors are merely exempt from this section when they dispense or prescribe controlled substances in the regular course of professional practice. *United States v.*

*Moore*, 423 U.S. 122, 131, 96 S.Ct. 335, 340, 46 L.Ed.2d 333 (1975).

## B.

USSG § 5H1.4 provides, in pertinent part: Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; *e.g.,* in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Here, the District Court departed downward because it found that the 65 year-old defendant "has a number of medical problems that suggest it would be less expense to the taxpayers and the public interest would be better served if he were confined in a community correction center where he could have his medical treatment here locally than under the aegis of the Bureau of Prisons." To support departure, the District Court relied on two letters, one from defendant's attending physician and one from his psychiatrist. Both letters express the belief that incarceration will have detrimental effects on defendant's health.

■ In reviewing departures from the guideline range, we apply a three-part test: (1) whether the case is sufficiently unusual to warrant departure, a legal question subject to de novo review; (2) whether the circumstances, if legally sufficient, are actually present, a factual question subject to a clearly erroneous standard of review; (3) whether the direction and degree of departure is reasonable.

*United States v. Johnson*, 979 F.2d 396, 400 (6th Cir.1992) (citations omitted). Applying this standard, we remand for more thorough factfinding as to defendant's medical condition.

■ Our initial inquiry is whether defendant's diagnosed conditions are sufficiently unusual to warrant departure under § 5H1.4. Defendant's attending physician has diagnosed him with diabetes, hypertension, hypo-

thyroidism, ulcers, potassium losing entero-pathy, and reactive depression. Moreover, defendant's psychiatrist has diagnosed him with major depressive disorder. Both doctors are prescribing medication to the defendant. Legally, we find it possible that an aged defendant with a multitude of health problems may qualify for a downward departure under § 5H1.4. However, we note that such downward departures are rare. *See, e.g., United States v. Martinez–Guerrero,* 987 F.2d 618 (9th Cir.1993) (denying downward departure to a defendant who was legally blind); *United States v. Guajardo,* 950 F.2d 203 (5th Cir.1991) (denying downward departure to a defendant who had cancer, high blood pressure, and an amputated leg), *cert. denied,* 503 U.S. 1009, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992).

■ In view of the fact that defendant will be resentenced, the District Court should make more specific findings as to whether defendant has "an extraordinary physical impairment," or combination of impairments, worthy of departure. Toward this end, more evidence than the letters produced by the defendant may be necessary to determine the extent of defendant's infirmities and the prison system's ability or inability to accommodate them.[1]

## V.

For the foregoing reasons, defendant's convictions are AFFIRMED, his sentence is VACATED, and his case is REMANDED for resentencing.

---

1. We note here that defendant's diagnosis of depression following his arrest and conviction does not support a downward departure. *See United*

*States v. Harpst,* 949 F.2d 860, 863 (6th Cir. 1991).