**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur Quentice JONES, Defendant–Appellant.**

No. 01–5949.

United States Court of Appeals,
Sixth Circuit.

April 22, 2003.

Before: GILMAN and GIBBONS, Circuit Judges; and ECONOMUS, District Judge.*

GIBBONS, Circuit Judge.

Defendant-appellant Arthur Quentice Jones was convicted of thirteen counts of distribution of crack cocaine and one count of possession of crack cocaine with intent to distribute. Jones appeals his conviction

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

on the grounds that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he distributed crack cocaine and that the district court thus erred in denying his motion for acquittal after the close of the government's proof. Jones also argues that the district court abused its discretion by failing to grant his motion for a downward departure of his sentence. For the reasons set forth below, we affirm the conviction and the sentence imposed by the district court.

## I.

On January 10, 2001, Jones was indicted on fourteen counts of distributing cocaine base and one count of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The government moved to dismiss one distribution count of the indictment before trial, and the court granted that motion. The government called five witnesses at trial: Marion County detective Jackie Williams, Marion County chief detective Brent Myers, South Pittsburg police officer Wayne Jordan, confidential informant Anthony Hale, and DEA special agent Robert Chester.

The government first called Williams, who testified that on January 23, 2000, he and Myers observed Jones standing with another individual near Moore Park in South Pittsburg, Tennessee. Williams testified that he and Myers parked their car and walked toward Jones. Jones approached them, "asking what's going on, you know, what are you messing with me for or whatever, and statements to that effect." Williams stated that as Jones walked toward them, he "darted behind a large tree" for "a second or two" and then "came back out and kept on with this, what's going on, what are you messing with me for and all of this." Williams testified that he then "went to behind the

tree where he was, where I saw him go" and found a white bottle containing twenty-three rocks of crack cocaine. At this point, Jones was placed under arrest and searched. Williams testified that as Jones was placed under arrest, he stated, "I'm not the only drug dealer in South Pittsburg, why don't you all mess with somebody else." The officers also found $597 in cash on his person.

The government next called Myers, who testified that on January 23, 2000, he and Williams confronted Jones. Myers stated that from a distance of ten to fifteen feet he saw Jones make a motion with his hand behind a tree, but that the tree obscured his vision and prevented him from seeing whether anything was released from Jones's hand. Myers then observed Williams retrieve a white bottle containing "23 rock-like substances believed to be crack rock" from behind the tree. Myers confirmed that $597 in cash was found on Jones. Myers testified that as Jones was placed under arrest, he said, "I'm not the only drug dealer in South Pittsburg, I don't know why you all are messing with me."

The government then called Jordan, who testified that he was responsible for making tape recordings of conversations between Hale and Jones. Jordan stated that the transcripts were a fair and accurate representation of what was heard on the recordings. Jordan testified that he equipped Hale with a body wire and provided Hale with money. Hale then purchased narcotics from Jones and gave the narcotics to Jordan. Jordan testified that he saw Jones "get into the vehicle" with Hale on two occasions.

The government next called Hale, who testified that his entire life he had known Jones. Hale testified that beginning in 1999, he bought crack cocaine for the drug task force. Hale stated that he met with

Jordan, who placed a wire on Hale, gave him money, and searched him and his vehicle before each buy. Hale explained that he was paid $50 for every buy. Hale also testified that he assisted in the preparation of the transcripts of the recordings, and that while some of the recordings were difficult to decipher, others were clear.

The government then asked Hale about each of the purchases he made from Jones. Before discussing each transaction with Hale, the government first played a recording of the transaction. Hale testified to purchasing crack cocaine from Jones on the following dates: December 19, 1999; December 29, 1999; December 31, 1999; January 17, 2000; January 23, 2000; January 29, 2000; January 31, 2000; February 4, 2000; February 6, 2000; February 10, 2000; February 29, 2000; May 5, 2000; and May 30, 2000.

On the recording of the January 31 transaction, Hale can be heard complaining about the quantity of crack cocaine, to which Jones responds, "That's the best I can do." Hale also can be heard telling Jones that he will deliver the cocaine and get Jones his money. Hale also asks Jones for "an eight-ball in solid," which Hale explained was an eight-ball of crack cocaine, and Jones answers, "I can get you some, a solid f'ing ounce" at the cost of $1,200.

Chester was the final witness called by the government. He testified that the twenty-three crack rocks contained in the bottle recovered on January 23, 2000, was an amount consistent with "intent to distribute" rather than personal use. Chester also explained that his conclusion was based upon the fact that Jones had "identified himself as a, for one, as a drug dealer, two, the fact that this portion of cocaine and the sum of money that was found on him."

After the conclusion of the government's case, Jones moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion. Jones called no witnesses. Both sides presented closing arguments, and the court instructed the jury, which returned a guilty verdict as to all remaining counts.

Following the guilty verdict, a presentence investigation report was prepared that reflected two prior cocaine distribution convictions from state court. The report concluded that these convictions were "predicate convictions for Career Offender purposes." As a result, Jones's sentencing guideline range was determined to be 262–327 months. On July 12, 2000, Jones filed a motion for downward departure. Pursuant to Section 5H1.4 of the Sentencing Guidelines, Jones claimed "extraordinary physical impairment" as a result of heart disease. Jones also argued that he was "not the typical Career Offender" because he "sold small quantities" and was thirty-eight years old before he became involved in criminal activity.

At the sentencing hearing, the district court concluded that, with respect to Jones's health, "I don't think that we're looking at a man that's in any kind of acute physical distress here and, otherwise, receiving medical treatment." With respect to the career offender provision, the court noted that Jones has "been dealing drugs constantly except for the time that he's been in prison since '89. I mean, it may be small amounts, but it's been constant." The court thus denied the motion for downward departure and sentenced Jones to 262 months, the lowest sentence within the guideline range.

## II.

### A.

This court reviews claims of insufficient evidence using the same standard as the

district court. *United States v. Avery,* 128 F.3d 966, 971 (6th Cir.1997). "In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999). "A court properly denies a challenge to the sufficiency of the evidence where 'after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986) (quoting *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (citing *United States v. Stone,* 748 F.2d 361 (6th Cir.1984)). When reviewing a challenge to the sufficiency of the evidence, this court must not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis,* 177 F.3d 552, 558 (6th Cir.1999). "[T]he granting of a motion to acquit 'will be confined to cases where the prosecution's failure is clear.'" *United States v. Keeton,* 101 F.3d 48, 52 (6th Cir.1996) (quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (footnote omitted)).

█ Jones asserts that the government presented insufficient evidence to sustain *his conviction under* 21 U.S.C. § 841(a)(1) and that the district court therefore erred in denying his motion for a judgment of acquittal. Viewing the evidence in the light most favorable to the prosecution, Jones's challenge to the sufficiency of the evidence fails. The government introduced ample evidence from which the jury could find beyond a reasonable doubt that Jones possessed cocaine base with the intent to distribute and that Jones distributed cocaine base. In particular, Williams and Myers testified that they saw Jones "dart[ ] behind a tree" as he approached them, and that a bottle containing twenty-three crack rocks was recovered from that location by Williams moments later. Williams and Myers also testified that at the time of the arrest Jones admitted to being a drug dealer. Confidential informant Hale testified that he purchased crack cocaine from Jones on thirteen separate occasions. Hale's testimony was corroborated by recordings of several of these transactions, and while Jones correctly notes that some of the recordings were of "extremely poor quality," others were "pretty clear." Jones and Hale can be heard discussing the sale and delivery of cocaine on some of the recordings. Additional support for Hale's testimony was provided by Jordan, who testified that he observed Hale and Jones get into a vehicle together on two of these occasions. Consequently, Jones's motion for a judgment of acquittal was properly denied.

Throughout his brief, Jones challenges Hale's credibility, arguing that "Hale had a clear motive to keep the police happy." The credibility of witnesses, however, cannot be challenged on appeal. "[I]t is well settled that on appeal, there 'is no place ... for arguments regarding a government witness's lack of credibility.'" *Talley,* 164 F.3d at 996 (quoting *United States v. Adamo,* 742 F.2d 927, 934–35 (6th Cir. 1984)). Although Jones suggests that Hale "could easily have acquired [the crack

cocaine] from a source other than Mr. Jones," this court has held that " '[i]t is for jurors and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.' " *Id.* at 996–97 (quoting *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985)). Jones had the opportunity to attack Hale's credibility on cross-examination and during his closing argument. The jury was able to assess Hale's credibility at trial. Based on the evidence presented, the jury was not irrational in finding beyond a reasonable doubt that Jones distributed cocaine base.

■ Jones also claims that the count of the indictment concerning the incident involving Jones, Williams, and Myers in Moore Park was "purely speculative" since "none of the officers saw Mr. Jones in possession of the vial of crack cocaine that was picked off the ground." As this court has noted, however, "circumstantial evidence alone can sustain a guilty verdict and . . . need *not* remove every reasonable hypothesis except that of guilt." *Stone,* 748 F.2d at 362. Here, as previously mentioned, Williams and Myers both testified that immediately prior to recovering the bottle from behind a tree, they saw Jones duck behind the tree and make a motion with his hand. This observation, combined with Jones's subsequent incriminating statements, adequately supported the jury's decision to convict the defendant as to this count.

**B.**

Jones claims that the district court abused its discretion by failing to grant his motion for a downward departure. Specifically, Jones argues that he "sold small quantities of cocaine" and was "not a large scale dealer." Jones also that claims that his "health problems" mandated a downward departure. Jones further alleges that "the judge did not understand that he could depart from the guidelines under the Career Offender [provision]" and claims that "the court clearly indicated it's [sic] belief that it had no discretion." In response, the government claims that the issue is not reviewable on appeal and that, in any event, the district court properly exercised its discretion in declining to grant the departure sought by Jones.

A district court's discretionary decision not to depart downward from the sentencing guidelines range normally is not appealable. *United States v. Prince,* 214 F.3d 740, 766 (6th Cir.2000). An appeal may be taken, however, when the district court believed that it lacked any authority to depart downward as a matter of law. *Id.* "If the court's refusal to depart stemmed from its legal conclusion that the circumstance argued by the defendant was not a valid reason for departure, the decision is reviewable." *Id.* (citing *United States v. Ford,* 184 F.3d 566, 585 (6th Cir.1999)). "When reviewing a ruling which fails to affirmatively state that the judge knew he could depart downward, 'it should be assumed that the court, in the exercise of its discretion, found downward departure unwarranted.' " *Prince,* 214 F.3d at 766 (quoting *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995)).

■ Here, the record reflects the district court's knowledge of its authority to grant the departure sought by Jones. After hearing the argument of Jones's counsel that "he's been suffering from cardiovascular disease, hypertension" and that Jones "had problems with his stomach, with his diet, and he's had a multiple health problems," the court concluded, "I don't think this is the kind of case which fits within the language of 5H1.4, certainly, because of the nature of this offense this is not the kind of offense that home detention would be a viable alternative for and the Bureau of Prisons does have facilities that

can accommodate the defendant's heart problems." This statement indicates the district court's awareness of its discretionary power to depart, thereby precluding review of the sentencing judge's decision not to grant a downward departure on this basis.

■ Furthermore, as to Jones's status as a career offender, the district court again made clear that it was aware of its power to make a downward departure. The sentencing judge emphasized that Jones had "been dealing drugs constantly except for the time that he's been in prison since '89" and "it may be small amounts, but it's been constant." The record thus reflects that the district court considered and rejected the arguments advanced by Jones at the sentencing hearing. Explaining that Jones had failed to distinguish his situation from cases where the career offender provision is typically applied, the sentencing judge stated, "I can't say that his criminal history category significantly overrepresents the seriousness of his history any more than I can in most any cases where we have a career offender provision that kicks in." Consequently, Jones's assertion that the district court was unaware of its ability to depart downward is without merit.

### III.

For the reasons set forth above, we affirm the conviction and the sentence imposed by the district court.