**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0212n.06
Filed: April 23, 2008

**No. 06-6351**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| v. | ) | |
| | ) | **O P I N I O N** |
| **RICHARD KEESEE,** | ) | |
| | ) | |
| *Defendant-Appellant.* | ) | |

**BEFORE:** **RYAN, SILER, and COLE, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.** A federal grand jury in the Middle District of Tennessee indicted Defendant-Appellant Richard Keesee of conspiracy to distribute cocaine, cocaine base, and marijuana. Keesee subsequently pleaded guilty to this charge. Keesee now appeals his conviction and sentence on the grounds that: (1) he did not waive his right of appeal; (2) the district court erroneously sentenced him for conspiring to distribute cocaine base although he pleaded guilty only to conspiracy to distribute marijuana; (3) the district court's sentence was not reasonable under *United States v. Booker*, 543 U.S. 220 (2005); (4) the district court's findings were insufficient under Federal Rule of Criminal Procedure 32(c)(1) in ruling on Keesee's objections to his Presentence Investigation Report; and (5) the district court failed to ensure that Keesee discussed his Presentence Investigation Report with his counsel, in violation of Federal Rule of Criminal Procedure 32(i)(1)(A). Because Keesee entered into a constitutionally valid waiver of appellate

review—knowingly and voluntarily waiving his right to appeal–and none of the exemptions to the waiver provisions applies, we are without jurisdiction to entertain the instant case and accordingly dismiss Keesee's appeal.

**I.**

On March 26, 1998, a Grand Jury in the Middle District of Tennessee returned a one-count indictment, charging Keesee with conspiracy to knowingly and intentionally distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Grand Jury, on February 25, 1999, returned a six-count Third Superseding Indictment, charging Keesee and additional defendants with the same crime. On August 11, 1999, Keesee, in turn, pleaded guilty to Count Two of the indictment–conspiring to distribute over two kilograms of cocaine, 1.5 kilograms of cocaine base ("crack cocaine"), and an unspecified amount of marijuana.

On appeal, Keesee relies on two documents in support of his request to vacate his conviction and sentence: (1) a Petition to Enter a Plea of Guilty ("Petition"), and (2) a letter from Wendy H. Goggin, United States Attorney, signed by Sunny A.M. Koshy, Assistant United States Attorney. The letter, which states that it is a plea agreement ("Plea Agreement"), is addressed to Keesee's attorney, Larry Hoover, begins by reciting that "[t]he following plea agreement terms have been approved for your client, Richard Kessee [sic]." (JA 128.) Both Keesee and Hoover signed the Plea Agreement.

Two provisions in the Petition and Plea Agreement are at the center of this appeal. In paragraph five of the Petition, Keesee attested to the following: "I also understand that, if the court fails to follow the guidelines or improperly applies the guidelines, I have a right to a review of my

sentence by the United States Court of Appeals for the Sixth Circuit." (JA 123.) The second

provision is paragraph 14 of the Plea Agreement, which states that

> [t]he defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the offense level as determined by the court or the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. Such waiver does not apply, however, to claims of prosecutorial misconduct, ineffective assistance of counsel, or if the Court departs upward.

(JA 131.)

The district court conducted a plea hearing on August 11, 1999. At this hearing, Keesee

stated under oath that Hoover had discussed the Petition with him paragraph-by-paragraph prior to

Keesee signing it and that Keesee did not have any questions about the Petition or Plea Agreement

at the time of the hearing. When the court questioned Keesee as to the nature of the charge against

him in Count Two of the indictment, Keesee explained that "I am charged with conspiracy, aiding,

and abetting, and to distributing." (JA 154.) When the court clarified that "[y]ou're charged with

being part of a conspiracy, whose purpose was to possess and distribute cocaine?", Keesee answered

affirmatively. (*Id.*)

The court then explained the maximum penalties associated with the charge, the role of the

United States Sentencing Guidelines ("Guidelines"), the function of the Presentence Investigation

Report, the option available to Keesee of objecting to the provisions of the Report, and the court's

discretion to depart from the Guidelines upon a finding of unusual circumstances. The court

additionally informed Keesee of his "right to appeal from the sentence of this Court" as well as the

government's "right to appeal . . . subject to restrictions on appeal and a plea agreement." (JA 157.) The court further instructed Keesee that the entry of a guilty plea would include a waiver of certain constitutional rights, such as his right to trial, right to counsel, the presumption of innocence, and protection against self-incrimination, and called upon Hoover to summarize the Petition and Plea Agreement.

Hoover affirmed at the plea hearing that Keesee was entering a guilty plea to Count Two of the indictment and asked that the court give Keesee a three-level reduction in his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b). Hoover also explained that Keesee was requesting relief under U.S.S.G. § 5K1.1, the Guidelines provision that allows for a downward departure for a defendant's substantial assistance to the Government in the investigation or prosecution of another person who has committed an offense. When the court asked the Government whether it agreed with Hoover's account of the Plea Agreement, Koshy stated he had nothing to add except that "[t]here is standard language about waiver of the collateral petitions." (JA 162.)

Next, J. Steven Dickey, a Special Agent with the Federal Bureau of Investigation, provided a statement under oath relating the facts underlying Keesee's conviction. Keesee admitted to the facts as set forth by Dickey. The court thereafter questioned Keesee once again, "And do you still wish to waive your rights at trial and enter this plea?", to which Keesee replied affirmatively. (JA 169.) The court thereupon made a "finding that Mr. Keesee knows his rights, he has voluntarily waived them, entered a plea of guilty, there is a factual basis for a finding of guilt . . . I will accept the plea agreement." (JA 169-70.)

On October 6, 1999, the United States Probation and Pretrial Services Department prepared a Presentence Investigation Report ("PSR") for Keesee's case. The PSR recommended a base offense level of 38 and, in accordance with the provisions of U.S.S.G. § 4B1.1, a criminal history category of VI in light of Keesee's status as a Career Offender. Upon factoring in downward adjustments pursuant to U.S.S.G. § 3E1.1(a) (acceptance of responsibility) and U.S.S.G. § 3E1.1(b) (assistance in investigation or prosecution of misconduct), the PSR specified a total offense level of 35 and a sentencing range of 292 to 365 months of imprisonment.

On September 25, 2006, Keesee filed a sentencing memorandum and objections to the PSR. At the sentencing hearing held on September 28, 2006, the district court overruled each of Keesee's objections. At the conclusion of the proceedings, the court issued its sentence:

> Mr. Keesee, I am going to commit you to the custody of the Attorney General of the United States or his designated representative for a period of 292 months. And in imposing that sentence I am taking into consideration the fact that you are a Career Offender, your lengthy criminal record, the offense charged. And that is at the very low end of the Guidelines because I have already–I have also taken into consideration your cooperation in the State case and your attempts at rehabilitation and other conduct while incarcerated other than your attempt to defraud the Government and also considering your age.

(JA 210-11.)

Keesee filed a timely notice of appeal on October 19, 2006.

## II.

### A. Standard of Review and Jurisdiction

The threshold issue before us is whether we may properly exercise jurisdiction over this appeal. Keesee asserts that we may reach the merits of his arguments pursuant to 28 U.S.C. § 1291,

because the district court issued a final decision in this matter on October 11, 2006. Keesee further

contends that contradictory language in the Petition and Plea Agreement regarding the waiver of

appellate review renders these provisions ambiguous, thereby enabling us to review his case de novo.

The United States, on the other hand, insists that, pursuant to the Plea Agreement, Keesee voluntarily

and knowingly waived the right to appeal his sentence and therefore the appeal should be dismissed.

In determining whether a defendant validly waived the right to appeal his sentence in a plea

agreement, we apply a de novo standard of review. *United States v. Smith*, 344 F.3d 479, 483 (6th

Cir. 2003).

## B. Waiver of Appellate Review

Our precedent firmly establishes that a defendant in a criminal case may waive the right to

appeal his sentence in an otherwise valid plea agreement. *Smith*, 344 F.3d at 483. A plea agreement

in turn survives constitutional muster and is valid when the defendant agrees to its terms knowingly

and voluntarily. *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). As part of a valid

waiver, a defendant "may waive constitutional or statutory rights then in existence as well as those

that courts may recognize in the future." *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir.

2005), *cert. denied*, 126 S.Ct. 145 (2005). When presented with a valid waiver, we are "bound by

that agreement and will not review the sentence except in limited circumstances." *Smith*, 344 F.3d

at 483 (citing *United States v. Stubbs*, 279 F.3d 402, 410 (6th Cir. 2002)); *see also United States v.*

*Madden*, 403 F.3d 347, 348 (6th Cir. 2005) (holding that defendant's "plea agreement foreclosed

appeal of his conviction, and this court enforces such waivers.").

To decide whether we possess jurisdiction to consider the instant appeal, the central inquiry becomes whether the plea documents are ambiguous regarding appellate waiver, as Keesee contends. If the provisions regarding appellate waiver are, in fact, clear, we must in turn decide whether they are enforceable by answering the following questions: (1) whether Keesee entered into the waiver voluntarily and knowingly, and whether the colloquy at the plea hearing complied with the dictates of Federal Rule of Criminal Procedure 11; and (2) whether the issues on appeal fall within the precise scope of the waiver.

### 1. **Ambiguity**

At the outset, Keesee argues that the Petition and Plea Agreement contain "directly conflicting provisions" regarding his right to appeal the sentence imposed by the district court. He accordingly contends that we must disregard any provisions regarding waiver, as ambiguity in a criminal plea is to be construed in a defendant's favor. Specifically, Keesee contends that the final sentence of paragraph five of the Petition—"[t]hese [factual and legal] findings [underlying the district court's final guideline calculation] are subject to appeal"—is in direct conflict with paragraph fourteen of the Plea Agreement—"the defendant knowingly waives the right to appeal any sentence within the maximum provided in the offense level." (JA 123, 131.)

According to the terms of paragraph five, Keesee's appellate rights are only conditionally subject to waiver in those instances where the district court correctly followed the Guidelines and properly applied their terms. The conditional waiver thus leaves open the possibility of appeal to this Court in the case where the district court erred in its application of the Guidelines. Keesee argues that this conditional waiver stands in direct opposition to paragraph fourteen's wholesale

waiver of appeal of the sentence and waiver of appeal on the grounds of 18 U.S.C. § 3742 or any other grounds. It must be noted, however, that the Petition simply represents the defendant's request to enter a plea of guilty, and the acknowledgment by the Government sets forth the maximum punishment and indicates that the "plea and plea agreement are accurately stated" in the Petition.

Keesee takes issue with the "government's attempt to separate the legal implications of the . . [P]etition from the [P]lea [A]greement itself" and asserts that "paragraph 10 of the petition specifically incorporates the [P]lea [A]greement into the [P]etition." A review of paragraph ten of the Petition, however, makes clear that the Petition is a separate document from the Plea Agreement, and the mere fact that the Petition makes reference to the Plea Agreement does not mean that it incorporates the terms of the Petition. That is, paragraph ten of the Petition states that "[t]his plea is a result of a plea agreement between my lawyer and the prosecution under the provisions of Rule 11 of the Federal Rules of Criminal Procedure. *The plea agreement is as follows: see attached letter from AUSA Koshy dated August 11, 1999.*" (JA 125 (emphasis added).) Thus, in setting forth the terms of the Plea Agreement between Keesee and the Government, the Petition itself makes clear that the Plea Agreement, as detailed in Koshy's letter dated August 11, 1999, provides the binding terms. Moreover, Koshy's letter begins by stating that "[t]he following plea agreement terms have been approved for your client, Richard Kessee [sic]." (JA 128.) In other words, both the Petition and Plea Agreement make clear that the Plea Agreement is the document setting forth all terms of the parties' agreement as to the plea . Accordingly, the provisions in paragraph fourteen of the Plea Agreement on waiver, rather than the contents of the Petition, control. *See United States v. Brown*, 9 F. App'x 442, 444-45 (6th Cir. 2001) (per curiam) (unpublished) ("Although the language in the

[plea] petition and the [plea] agreement could be construed to conflict, a more reasonable interpretation of the two documents is that the petition, which is on a pre-printed form and phrased broadly, notifies the defendant that appeal is possible, while the agreement, which is specific to an individual defendant, sets the limitation on the right to appeal.").

### 2.      Federal Rule of Criminal Procedure 11

In further arguing that the waiver provisions of the Plea Agreement are not binding, Keesee invokes Federal Rule of Criminal Procedure 11. Specifically, he insists that, during the plea hearing, the district court failed to advise him of the appellate waiver in the Plea Agreement in violation of Federal Rule of Criminal Procedure 11(b)(1)(N).

In the instant case, Keesee made no reference to Rule 11 during the proceedings in the district court. We engage in plain-error review of purported violations of Rule 11 when the defendant did not raise an objection before the district court. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). Pursuant to plain-error review then, Keesee shoulders the burden of proof to demonstrate "that there is '1) error, 2) that is plain, and 3) that affects substantial rights.' *Murdock*, 398 F.3d at 496. Upon a showing of these three elements, we "may exercise [our] discretion to notice a forfeited error, but only if 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*. (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

Rule 11 provides the following:

(b) Considering and Accepting a Guilty or Nolo Contendere Plea.

> (1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b)(1)(N).

Marshaling Rule 11, Keesee asserts that, during the plea hearing, "[n]o one said that the plea agreement required the defendant to give up his right to a direct appeal."

The record of the plea hearing, however, belies Keesee's claim. The district court administered an oath to Keesee and informed him openly in court of his "right to appeal from the sentence of this Court" as well as the government's "right to appeal . . . *subject to restrictions on appeal and a plea agreement*." (JA 157 (emphasis added).) In contrast to Keesee's claim, the court thus did explain that Keesee's right to direct appeal was "subject to restriction . . . [contained in the] plea agreement." (*Id*.)

Keesee also affirmed at the plea hearing that he had reviewed the Plea Agreement on a paragraph-by-paragraph basis with his attorney and that the attorney had explained its contents to him. *See Murdock*, 398 F.3d at 497-98 (holding that "in the absence of an inquiry into the appellate waiver by the district court as required under [Rule 11], some other event could suffice to insure that Defendant's waiver was knowing and voluntary... It might, for example, be sufficient for a defendant to assure the district court that he has reviewed the waiver provision (or, at a bare minimum, the plea agreement) with his attorney and that his attorney has explained it.").

Additionally, the plea colloquy is replete with other indicia of voluntariness. For example, the district court confirmed Keesee's level of education, mental and emotional state, and freedom from the effects of drugs and alcohol. The court then reviewed the Plea Agreement with Keesee while under oath and found that Keesee understood it, and that he had no questions about the terms of his plea or the agreement. Keesee further testified that he had not been coerced or pressured into pleading guilty by any party or entity. After Special Agent Dickey testified as to the factual basis for Keesee's guilty plea, the court once again inquired of Keesee, "And do you still wish to waive your rights at trial and enter this plea?", to which Keesee replied affirmatively. (JA 169.) Based on the foregoing colloquy, the court concluded that "Mr. Keesee knows his rights, he has voluntarily waived them, entered a plea of guilty, [and] there is a factual basis for a finding of guilt." (JA 169.)

This exchange between the district court and Keesee shows that the court took multiple steps to ensure that Keesee understood the terms of the waiver and its consequences. *See United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006) (district court's failure to specifically mention appellate waiver does not rise to plain error when there are other indicia of voluntariness)*; United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (finding Rule 11 plea colloquy to be valid, although not extensive, when court directed yes-or-no questions to defendant and defendant provided a simple answer of "Yes, your Honor"); *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004) (finding defendant knowingly waived his right to appeal, although the district court incorrectly stated at the sentencing hearing that defendant retained the right to appeal, because the "waiver provision . . . was contained in a written agreement, [defendant] was informed in open court [at the plea hearing] that he had given up his right to appeal whatever sentence he received, and the district court

expressly found that [defendant] had made the waiver knowingly" and because defendant "'had an adequate opportunity to read and review this entire plea agreement with [his] attorney.'"). Given these various indicia of voluntariness, the district court did not commit error, plain or otherwise, in connection with Keesee's waiver of his right to appeal.

### 3. Scope of Waiver

Finally, Keesee argues that the provisions of paragraph fourteen only forego his right to appeal his sentence. While paragraph fourteen does expressly waive Keesee's right to appeal his sentence, it also constitutes a waiver of Keesee's right to appeal "the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any other ground whatever." (JA 131.) In his reply brief, Keesee omits reference to this portion of paragraph fourteen. As this provision makes clear, however, Keesee's attempts to challenge his sentence on the basis of Federal Rules of Criminal Procedure 32(c)(1) and 32(i)(1)(A) plainly fall within the purview of an appeal based on "any other ground whatever." Additionally, these provisions of the Federal Rules of Criminal Procedure also fall within the purview of an appeal based on 18 U.S.C. § 3742(a)(1), which entitles a criminal defendant to appeal a final sentence by claiming that it was imposed "in violation of law." 18 U.S.C. § 3742(a)(1). Thus, Keesee's insistence that we should scrutinize the waiver provisions closely and apply them narrowly, while a proper directive, does not lead to the conclusion he suggests.

Based on the foregoing, we conclude that Keesee has waived his right of appeal; and a valid waiver, in turn, warrants dismissal of an appeal filed in violation of the terms of the waiver. *See*

*United States v. McGilvery*, 403 F.3d 361, 362-63 (6th Cir. 2005) (finding the Court lacked jurisdiction when defendant validly waived the right to appeal his sentence but argued on appeal that he should be resentenced in light of the Supreme Court's intervening decision in *Booker*). Because we lack jurisdiction, we do not reach the merits of Keesee's remaining arguments.

## III.

For the aforementioned reasons, we DISMISS this appeal for lack of jurisdiction.

RYAN, Circuit Judge, concurring.          In my view we are not without jurisdiction to consider and reject the defendant's appeal.  See United States v. Dillard, 438 F.3d 675, 684-85 (6th Cir.), cert. denied, 127 S. Ct. 291 (2006).  The defendant cannot divest this court of its ordinary appellate jurisdiction simply by waiving his right to appeal his case.  Indeed, we are exercising our jurisdiction when we issue a judgment of dismissal on the ground that we decline to entertain the defendant's appeal on the merits, given his written waiver.  United States v. Caruthers, 458 F.3d 459, 472 n.6 (6th Cir.), cert. denied, 127 S. Ct. 752 (2006).

In my opinion it is not a matter of mere semantics:  to lack the authority (jurisdiction) to hear Keesee's appeal is one thing, but to decline to exercise the full range of that authority (jurisdiction), as a matter of judicial policy, which is what we are doing here, is quite another.  That said, I **CONCUR** in the court's judgment of dismissal.