**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0506n.06

**No. 08-1911**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 21, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ISSA ZUMOT, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MCKEAGUE and WHITE, Circuit Judges, and MARBLEY, District Judge.[*]

**MARBLEY, District Judge**. Defendant-Appellant Issa Zumot ("Zumot") pleaded guilty to one count of conspiracy to possess or distribute a listed chemical, or having reasonable cause to believe that the chemical would be used to manufacture a controlled substance. The district court sentenced him to 168 months' imprisonment. Zumot appeals, contending that the district court failed at sentencing to consider properly his motion for downward departure based upon his age, infirmity, and poor health. Because Zumot entered into a constitutionally valid waiver of appellate review—knowingly and voluntarily waiving his right to appeal—we are without jurisdiction to entertain the instant case and, accordingly, **DISMISS** Zumot's appeal.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

On August 13, 2002, Zumot was indicted by a federal grand jury on two counts. Count One charged him with conspiracy to possess or distribute a listed chemical knowing, or having reasonable cause to believe, that the chemical would be used to manufacture a controlled substance, in violation of 21 U.S.C. §§ 841(c)(2) and 846. Count Two charged him with possession or distribution of a listed chemical knowing, or having reasonable cause to believe, that the chemical would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2).

On February 25, 2004, pursuant to a Rule 11 Plea Agreement (the "Plea Agreement"), Zumot pleaded guilty to Count One of the Indictment in the United States District Court for the Eastern District of Michigan. The Plea Agreement specifically advised Zumot that he was waiving his right to appeal his sentence and conviction, stating:

> Defendant's waiver of appeal rights. If the court imposes a sentence equal to or less than the maximum sentence described in ¶ 2 of this agreement,[1] defendant waives any right he may have to appeal his conviction or sentence, including any right under 18 U.S.C. § 3742 to appeal on the grounds that the sentence was imposed as a result of an incorrect application of the guidelines.

(Record on Appeal ("ROA") Vol. I, pp. 117, ¶ 7.)

During the plea colloquy, the district court discussed Zumot's constitutional rights, and specifically asked him questions about the Plea Agreement, including whether he had any questions before he signed it, whether he reviewed the Plea Agreement with his counsel, and whether he

---

[1]Paragraph two of the Plea Agreement specified that the parties agreed that the sentencing Guidelines range was 168-210 months' imprisonment, and that the Government would recommend that appellant be sentenced to no more than 190 months' imprisonment.

understood it, signed it, and agreed to its provisions. Zumot affirmatively answered each of those questions and advised the court that everything had been explained to him.

The district court accepted Zumot's guilty plea, and scheduled a sentencing for June 17, 2004. On June 17, 2004, however, Zumot failed to appear for sentencing. Four years later, Zumot applied for a passport from the United States Embassy in Jordan for his return to the United States. On April 1, 2008, Zumot was arrested upon his return to the United States.

On June 24, 2008, Zumot's sentencing hearing was held. At the hearing, defense counsel made an oral motion for a downward departure from the 168-210 months sentencing Guidelines range, pursuant to USSG § 5H1.4, based upon Zumot's physical impairments. Zumot relied upon the physical impairments which were outlined in his original Presentence Report (the "PSR"), as well as those noted in an updated PSR.[2] In addition, Zumot listed numerous medications he was taking. Finally, Zumot emphasized that he was in his sixties.

In opposition to the motion, government counsel argued that "the majority of . . . [Zumot's] physical problems [we]re old and . . . [did not] prevent[] him from committing the instant offenses for which he stands convicted." (ROA Transcript Vol. II, p. 7.) Government counsel also noted that although the court had the discretion to grant a downward departure based upon an individual defendant's physical condition under USSG § 5H1.4, "the Section states that physical condition is

---

[2]Included among those infirmities were problems starting back in 1976, when he had surgery to remove ulcers. In 1978, he had treatment for chest pains. He had four or five strokes in the past 30 years, the most recent being in 2002. And he suffered from angina pectoris (a condition involving blockage of the heart), hyperlipidemia, hypertension, asthma, and tuberculosis. Zumot stated that his most significant concern was related to his heart, and stated that he had had two heart attacks and underwent a surgical procedure to alleviate heart artery blockage in 2003.

not ordinarily relevant in determining whether or not a departure may be warranted." (*Id.*) Finally, Government counsel concluded that there was "no evidence in the record that establishes that [Zumot] is seriously infirm[] or that he has an extraordinary impairment. Even if he did, the decision whether or not to depart downward would still be within the discretion of th[e] Court." (ROA Transcript Vol. II, pp. 7-8.)

After noting that Zumot "was a fugitive for four years . . . with this plethora of health issues outlined in the [PSR]," the district court found that no information had been provided to the court which "outlines . . . Zumot's health and medical treatment . . . for the last four years. There's no information provided to the Court that [his] list of medications [wa]s current . . . [or] if he . . . had any medical treatment, surgeries, et cetera while he was a fugitive." (ROA Transcript Vol. II, 10.) Thus, the court ruled that it was "hard-pressed to make a determination that his health issues are of such a concern that a downward departure would be warranted under the Guidelines." (*Id.*) The court determined, "given the absence of information in th[e] record for the last four years, the Court is not prepared to give a downward departure" from the Guidelines (*Id.*) The court, however, took into account Zumot's past medical history and opined that his history "influence[d] the Court to sentence Mr. Zumot to the low end of the Guideline." (ROA Transcript Vol. II, pp. 10-11.) The court sentenced Zumot to 168 months imprisonment, which was at the bottom of the applicable sentencing Guidelines range.

Zumot appeals on the ground that the district court failed at sentencing to consider properly Zumot's motion for downward departure based upon his age, infirmity, and poor health.

## II. JURISDICTION

The threshold issue before this Court is whether we may properly exercise jurisdiction over this appeal. Zumot asserts that we may reach the merits of his arguments pursuant to 28 U.S.C. § 1291, which provides, in pertinent part, that the courts of appeals shall have jurisdiction over appeals from all final decisions of the district courts. Further, in accordance with 18 U.S.C. § 3742(a)(1) and (2), a defendant may file notice of appeal in the district court for review of an otherwise final sentence if the sentence was imposed in violation of law or was imposed as a result of an incorrect application of the sentencing guidelines. The government asserts that pursuant to the Plea Agreement, Zumot voluntarily and knowingly waived the right to appeal his sentence; therefore, the appeal should be dismissed because this Court has no jurisdiction to consider it.

## III. STANDARD OF REVIEW

In determining whether a defendant validly waived the right to appeal his sentence in a plea agreement, we apply a de novo standard of review. *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). If we determine we have jurisdiction to review the reasonableness of Zumot's sentence, we review it under an abuse-of-discretion standard. *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007). A sentence is procedurally unreasonable if the district court:

> fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration. . . . Furthermore, when a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.

*Id.* at 250-51 (internal citations and quotations omitted). A sentence is substantively unreasonable if the district court, "selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). We accord a presumption of reasonableness to sentences that fall within the Guidelines ranges. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

## IV. LAW & ANALYSIS

The government contends that Zumot waived his right to appeal his 168-month sentence imposed by the district court because Zumot's Plea Agreement contained an appellate-waiver provision in which Zumot agreed to waive his right to appeal a within Guidelines sentence. The government asserts this waiver was executed knowingly and voluntarily.

We have established that "any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." *United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006). To help ensure that an appellate waiver is made "knowingly and voluntarily," a district court "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal. . . . " Fed. R. Crim. P. 11(b)(1)(N). Federal Rule of Criminal Procedure 11, however, does not require a district court specifically to ask a defendant whether he understands the terms of a waiver provision; rather, it only requires a court to "determine" that the defendant understands the terms of such provision. *United States v. Broom*, 207 F. App'x 565, 569 (6th Cir. 2006); *see also United States v. Keesee*, 275 F. App'x 4888, 493 (6th Cir. 2008) (finding district court's failure specifically to mention appellate

waiver did not rise to plain error when there were other indicia of voluntariness and other indicia that defendant had reviewed his plea agreement); *Wilson*, 428 F.3d at 674 (same).

A defendant is sufficiently informed that he has waived his right to appeal if the prosecutor, rather than the district court, summarizes the terms of the plea agreement and specifically explains that the defendant agreed to waive his right to appellate review. *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). In *McGilvery*, the district court "entrusted the responsibility of summarizing the plea agreement to the government, and the government explained that [defendant] agreed to waive his appellate rights on the condition that his sentence did not exceed twenty-four months." *Id.* at 363.

After the prosecutor summarized the terms of the Plea Agreement, the *McGilvery* district court ascertained that the defendant understood the terms as described by the prosecutor. *Id.*; *see also United States v. Shearer*, 301 F. App'x 450, 454 (6th Cir. 2008) (quoting *Wilson*, 438 F.3d at 674) ("Rule 11(b) is not violated where the prosecutor, rather than the court, 'fully explain[s]' the plea 'to defendant in open court.'"). It is not required that the district court specifically ask the defendant about the waiver provision; instead, the court can just inquire whether the defendant understood the plea agreement as described. *See Shearer*, 301 F. App'x at 454 (quoting *United States v. Sharp*, 442 F.3d 946, 949 (6th Cir. 2006)) (finding that a district court's "'failure to inquire specifically as to whether [the defendant] understood the appellate-waiver provision [is] not erroneous,' as long as the provision is 'adequately explained . . . in open court"); *Keesee*, 275 F. App'x at 493 (asking if a defendant understands his plea agreement and if he has any questions about his plea agreement is sufficient to show the waiver was made knowingly).

In this case, Zumot signed a Plea Agreement, containing an appellate-waiver provision. Zumot indicated to the court that no one had made any promises to him to induce him to plead guilty and no one had threatened him in order to induce him to plead guilty. The court did not specifically ask Zumot whether he understood the terms of the appellate-waiver. The court asked him, however, if he had any questions about the Plea Agreement before he signed it, to which he answered that everything had been explained to him. The court had government counsel inform Zumot that the sentencing Guidelines range was 168-210 months. Zumot told the court that he understood the Guidelines range for the sentence. The Court also asked government counsel to summarize the terms of the Plea Agreement. In summarizing the Plea Agreement, government counsel explained that "the Defendant agrees in Paragraph Seven that if the Court imposes a sentence equal to or less than the maximum sentence described in Paragraph Two of the Agreement, that the Defendant will waive all his rights." (ROA Transcript Vol. I, pp. 15-16.)[3] The court asked if Zumot understood what government counsel just summarized, specifically inquiring, "Is that your understanding of the major provisions of the Rule 11 Agreement that you signed?" (ROA Transcript Vol. I, p. 16.) Zumot answered affirmatively. The court found on the basis of what was testified to at the plea hearing that Zumot's plea was made knowingly and voluntarily.

We find, therefore, that the appellate-waiver in Zumot's plea agreement is enforceable, divests this Court of jurisdiction, and operates to prevent this Court from reaching the merits of his claim that the district court erred in denying his request for a downward departure in sentencing

---

[3]The maximum sentence was 190 months.

based upon his age, infirmity, and poor health. *See also, e.g., Shearer*, 301 F. App'x at 454 (holding that because the appellate-wavier provisions were valid, "we enforce them and refrain from reviewing the reasonableness of the defendants' sentences"); *United States v. Calderon*, 388 F.3d 197, 201 (6th Cir. 2004) (dismissing the appeal because the defendant waived his right to appellate review of his sentence); *Keesee*, 275 F. App'x at 494 (dismissing the appeal for lack of jurisdiction because the defendant  waived his right to appeal and refusing to reach the merits of the defendant's arguments); *Broom*, 207 F. App'x at 570 (declining to address the merits of the defendant's claim that his sentence was unconstitutional because he had validly waived his right to appeal); *Sharp*, 442 F.3d at 954 (finding the appellate-waiver provision in the plea agreement prevented the Court from reaching the merits of defendant's restitution claim).[4]

## V.  CONCLUSION

For the foregoing reasons, we **DISMISS** Zumot's appeal for lack of jurisdiction.

---

[4]Furthermore, a district court's decision to not depart downward from the sentencing Guidelines is normally unappealable, unless the court believed that it lacked any authority to depart downward. *United States v. Jones*, 63 F. App'x 826, 831 (6th Cir. 2003) (citing *United States v. Prince*, 214 F.3d 740, 766 (6th Cir. 2000)); *see United States v. Brown*, 66 F.3d 124, 128 (6th Cir. 1995) (citing *United States v. Hamilton*, 949 F.2d 190, 192-93 (6th Cir. 1991)) (finding "a lower court's informed decision not to depart from a valid guideline range is not reviewable"). "If the court's refusal to depart stemmed from its legal conclusion that the circumstances argued by the defendant was not a valid reason for departure, [however,] the decision is reviewable." *Prince*, 214 F.3d at 766 (citing *United States v. Ford*, 184 F.3d 566, 585 (6th Cir. 1999)). In this case, the record reflects that the district court knew it had authority to grant the departure sought by Zumot, but simply chose not to do so because the facts did not warrant it.

**WHITE, Circuit Judge** (concurring). Because I am not convinced that the waiver was procedurally valid,[1] I would decide this case on the merits.

Zumot's lone argument on appeal is that the district court's decision to deny his request for a downward departure based on his age, infirmity and health was erroneous given the court's reliance on four-year-old medical information about him. Zumot asserts that without complete and up-to-date information, the district court lacked the necessary foundation to reach a reasoned and reasonable determination regarding whether he suffered from exceptional impairments.

Zumot acknowledges that he did not object to the original PSR (prepared in 2004), or to the letter updating the PSR (prepared in 2008). Although at sentencing Zumot made arguments based on his medical condition, he supplied no updated documentation and did not request an opportunity to do so. Thus, our review is for plain error. *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004), *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008).

Zumot cites *Bostic* in support of his argument. This court noted in *Bostic*,

the district court effectively granted an eleven-level downward departure based upon Bostic's age and infirmities. As *Tocco* [*United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000),] makes clear, age alone cannot justify a *substantial* downward departure. Additionally, the district court granted the downward departure based only upon one letter from Bostic's treating physician and the Physical Condition section of the PSR. Although numerous "physical infirmities" might justify a downward departure, *Johnson* [*United States v. Johnson*, 71 F.3d 539 (6th Cir. 1995),] and *Tocco* indicate that a doctor's letter and the "Physical Condition" section of the PSR are not sufficient evidence to justify a downward departure. Finally, the district court made

---

[1]The plea hearing transcript is clear that neither the district court nor the prosecutor referred to or informed Zumot, or determined that Zumot understood, that the plea-agreement included a waiver of the right to appeal. Fed. R. Crim. Pro. 11(b)(1)(N). Zumot spoke through an interpreter.

no findings regarding whether Bostic's case is extraordinary, whether the BOP could accommodate Bostic, and whether home confinement would be equally efficient and less costly. Therefore, the district court erred by granting an eleven-level departure without sufficient evidence. If upon remand the evidence shows that Bostic's case warrants a departure, the district court must still find that the reasons justify the magnitude of the departure selected.

*Bostic*, 371 F.3d at 875. In a footnote, the *Bostic* court noted:

As in *Johnson* and *Tocco*, we think it is appropriate for the district court [on resentencing] to "obtain independent and competent medical evidence to determine the extent of [defendant's] infirmities and the prison system's ability or inability to accommodate him." *United States v. Tocco*, 200 F.3d 401, 435 (6th Cir. 2000) (citing *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995).

*Bostic* also made clear that "[u]nder the sentencing guidelines, age and health are disfavored factors that the district court may use as bases for granting a downward departure only in exceptional circumstances." *Bostic,* 371 F.3d at 875, citing U.S.S.G. §§ 5H1.1 and 5H1.4. It is apparent that the district court followed *Bostic* in reaching the conclusion that Zumot had not made a sufficient showing to warrant a departure based on his age, infirmity, and health.

Lastly, Zumot cites no case, and my research yielded none, that supports that, absent an objection to the PSR and/or updated PSR, the district court should have sua sponte requested updated medical information (and adjourned sentencing until such was available.) *Bostic* does not address circumstances similar to those presented here. I conclude that Zumot has not shown plain error.