**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0694n.06

No. 08-5769

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 10, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| TROY PARKER, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  BATCHELDER, Chief Circuit Judge, MOORE and COOK, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Following a jury trial in federal court, Troy Parker was convicted of four counts of bank fraud, in violation of 18 U.S.C. § 1344, and six counts of engaging in a monetary transaction in property from specified unlawful activity (i.e., money laundering), in violation of 18 U.S.C. § 1957.  The district court sentenced Parker to 120 months of imprisonment and five years of supervised release.  Parker's counsel presents two arguments on appeal; in a supplemental pro se brief, Parker wishes to augment his counsel's second argument and also to assert another claim related to his sentence.  For the following reasons, we **AFFIRM** the district court's judgment.

**I.  FACTS AND PROCEDURE**

Parker owned and operated several cleaning businesses in the greater Cincinnati, Ohio, and Covington, Kentucky, area.  Using false statements of his accounts receivables, tax filings, and

equipment inventories, Parker obtained several loans and lines of credit for these businesses from banks in the Northern Kentucky area between 2002 and 2004. Parker's fraud eventually came to the FBI's attention, and Parker was indicted by a federal grand jury in November 2007 on four counts of bank fraud in violation of 18 U.S.C. § 1344 and seven counts of money laundering in violation of 18 U.S.C. § 1957 (for transferring loan proceeds from one bank to another bank).

Six days prior to the scheduled jury trial, Parker's counsel moved for a second continuance to allow time to investigate Parker's diagnosis of and treatment for Dissociative Identity Disorder ("DID") by Dr. Donald Beere, a clinical psychologist. According to the PSR in this case, at the time of the arrest for the instant offense Parker had been seeing Dr. Beere for counseling related to his DID as a condition of his supervised release for a prior crime. The district court denied counsel's motion for a continuance because it found that a continuance was not warranted under the circumstances—Parker had known of his diagnosis for four years and it was included in the pretrial report—and because the time to file a notice of expert testimony related to a defendant's mental health had passed. The case proceeded to trial, and Parker did not introduce any witnesses in his defense. The government dismissed one of the money-laundering counts, and the jury found Parker guilty of all other counts.

The PSR grouped all counts of conviction for sentencing and recommended a Guidelines range of 97 to 121 months of imprisonment with an offense level of 29 and a criminal history category II. This range was reduced to 97 to 120 months because the money-laundering counts are statutorily capped at 120 months. The district court rejected all of Parker's counsel's objections to the Guidelines calculation based on specific offender characteristics for downward departures and rejected the government's request for either an upward departure or an upward variance. The court

2

then made a thorough review of the 18 U.S.C. § 3553(a) factors and sentenced Parker to 120 months of imprisonment for each count, to be served concurrently, and a total of five years of supervised release.  Parker filed a notice of appeal the next day.

## II.  ANALYSIS

### A.  Denial of Parker's Motion for a Continuance

Parker argues through counsel that the district court abused its discretion in denying his motion for a continuance to investigate what counsel asserts was newly revealed information of a prior DID diagnosis by Dr. Beere relevant to Parker's mental state because the district court improperly construed the motion as an untimely attempt to seek an insanity defense under Federal Rule of Criminal Procedure 12.2(b).[1]

---

[1] Federal Rule of Criminal Procedure 12.2 prescribes the procedures a defendant must follow in federal court to introduce mental-health related evidence or defenses in a criminal trial. In pertinent part, Rule 12.2 states,

> (a)  Notice of an Insanity Defense.  A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk.  A defendant who fails to do so cannot rely on an insanity defense.  The court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.
>
> (b)  Notice of Expert Evidence of a Mental Condition.  If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . (1) the issue of guilt . . . , the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.  The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

We review for abuse of discretion the district court's denial of a motion for a continuance.[2] *United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007). We may conclude that the district court's denial of a continuance rises to the level of a constitutional violation[3] only if the district court displayed "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000) (internal quotation marks omitted). The denial also must have resulted in actual prejudice to the defendant's defense, which may be "established by showing that a continuance would have made relevant witnesses available or added something to the defense." *Id.* (internal quotation marks omitted). Because "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process,'" our inquiry is dependent upon the circumstance of this case and "'particularly . . . the reasons presented to the trial judge at the time the request is denied,'" with the recognition that "[a] reasonable time for adequate preparation of the accused's defense is the first essential of trial fairness." *Garner*, 507 F.3d at 408 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 588–91 (1964)). In our analysis, we may consider several non-dispositive factors, including:

> the length of the requested delay; whether other continuances had been requested and granted; the convenience or inconvenience to the parties, witnesses, counsel and the court; whether the delay was for legitimate reasons or whether it was "dilatory,

---

[2]The Government contends that Parker's motion for a continuance was an untimely notice of intent to introduce evidence under Rule 12.2(b). We apply the same abuse-of-discretion standard of review to a denial on those grounds. *See United States v. McLernon*, 746 F.2d 1098, 1115 (6th Cir. 1984) ("The district judge has wide discretion to excuse appellants' failure to grant timely notice of their expert's testimony[ under Rule 12.2(b)], but also has broad discretion to exclude such testimony.").

[3]Parker has not alleged that the denial abridged any particular constitutional right, but our cases indicate that the failure to investigate a defense theory and/or call a defense witness may implicate either the Sixth Amendment right to present a defense with counsel or the Fifth Amendment right to due process. *See Garner*, 507 F.3d at 408; *Crossley*, 224 F.3d at 854–55.

purposeful or contrived;" whether the defendant contributed to the circumstances giving rise to the request; whether denying the continuance will result in identifiable prejudice to defendant's case; and the complexity of the case.

*Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Parker's trial counsel filed a motion requesting the continuance at issue six days before the scheduled trial start date stating that he did not become aware of Parker's DID diagnosis or treatment with Dr. Beere until he was meeting with Parker to discuss final trial matters the day before. Counsel stated that he needed additional time to investigate this new evidence because "[i]f Mr. Parker's DID was present at or before the time of the alleged criminal activity then it has a direct bearing on whether or not Mr. Parker formed or could have formed the requisite 'intent' to engage in the alleged criminal activity." Doc. 22 (Pl. Continuance Mot. at 3). At the hearing four days before trial, Parker's counsel argued that he did not yet have enough information to form the basis of a Rule 12.2 notice related to insanity or to decide whether any information "is going to have any bearing on the criminal intent, as I raise in my memorandum." Doc. 69 (Mot. Tr. at 8–9). Counsel also asserted that he was prepared to go to trial, but that he was concerned that Parker would be prejudiced if counsel had missed something.

The district court denied the motion on the record at the hearing, construing it as an attempt to file an untimely notice of Rule 12.2(b) evidence of a mental disease bearing on guilt, and barred any expert testimony at trial regarding Parker's mental condition. The court noted that "the fact that the pretrial services report does include the reference to Dr. Beere, [demonstrates that] your client certainly had knowledge that there may be something there which potentially could impact the defense of the action," and that "the defendant certainly knew of this diagnosis and condition for almost four years and, in fact, has been treating with Dr. Beere for 18 months while he's been on

5

supervised release." *Id.* at 13, 14–15. The court was also influenced by the fact that it had already granted one continuance for approximately seven weeks to accommodate defense counsel's schedule in another trial. The court found "that the second delay is of the defendant's own making," "that the delay of the current motion will unduly delay the proceedings," and "that the defendant has failed to show adequate good cause to excuse his failure to give the [Rule 12.2(b)] notice." *Id.* at 14. The case proceeded to trial as scheduled, and the defense presented no witnesses at trial.

We conclude that the district court did not abuse its discretion. We have previously concluded that it is not an abuse of discretion to deny a continuance where the defense counsel's claimed lack of adequate preparation time was based on late notice of evidence obtained from the defendant or the defendant's unwillingness to help prepare the defense. *See Broom v. Mitchell*, 441 F.3d 392, 414–15 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). And the Supreme Court has noted that a district court does not necessarily abuse its discretion when its denial of a continuance results in the defense offering no evidence. *Ungar*, 376 U.S. at 589. Even if it is "arguable" that another court may have granted the continuance—and we agree that it is definitely arguable under the circumstances here—"the fact that something is arguable does not make it unconstitutional." *Id.* at 591. Based on the timing of the request, the mention of Parker's treatment with Dr. Beere in the pretrial services report, Parker's knowledge of his own treatment, and defense counsel's acknowledgment that he knew Parker was undergoing counseling prior to his trial in this case, we conclude that it was not an abuse of discretion for the district court to deny the request. Although we are wary to condone basing the denial of a continuance on defense counsel's need to rely on a defendant with an alleged mental disability that affects his memory—and given these considerations

6

we may have decided differently had we been the trial court—we cannot agree that the district court abused its discretion here.

We are also unpersuaded that Parker has satisfied his burden to demonstrate actual prejudice from the denial "by showing that a continuance would have made relevant witnesses available or added something to the defense." *Crossley*, 224 F.3d at 855 (internal quotation marks omitted); *see United States v. Harris*, 308 F. App'x 932, 938 (6th Cir. 2009) (unpublished opinion) ("A showing of prejudice based on new evidence or new witnesses that the defendant would have produced if the motion had been granted must be made with specificity."). Parker contends that if the court had granted a short continuance, then "the defense could have offered Dr. Beere as a witness to explain to the jury Parker's inability to recall any of the events outlined in the indictment"—testimony that Parker asserts would not have been presented to bear on whether Parker met the legal definition of insanity or whether Parker had the requisite mental state in a manner that implicates Rule 12.2(b). Appellant Br. at 20–21. It is unclear how Dr. Beere's potential testimony, as Parker characterizes it on appeal, would have added to his defense in a non-expert capacity that could escape the requirements of Rule 12.2(b), especially in light of the fact that Parker did not testify at trial and his counsel did not present an argument related to Parker's inability to recall the events at issue. *See id.* (stating Dr. Beere would not have offered testimony about an insanity defense or provided an "opinion on a[n] ultimate issue to be decided by the trier of fact" but rather could have testified that "[i]n Dr. Beere's opinion Parker's amnesia was so complete that it was likely that another 'alter' performed these acts"); Reply Br. at 2–3 ("Dr. Beere's testimony would have only concerned Parker's mental condition at the time of [Dr. Beere's] treatment of Parker, not the time frame of his offenses."). Under the circumstances as presented to the district court, and even with the additional

7

information relating to Dr. Beere's potential testimony that Parker included in his brief on appeal, we cannot conclude that the district court abused its discretion in denying the continuance.

**B. Denial of Parker's Request for a U.S.S.G. § 5K2.13 Departure**

"We do 'not review decisions of a district court not to depart downward unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure.'" *United States v. Heath*, 525 F.3d 451, 459 (6th Cir. 2008) (quoting *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005)). Although he acknowledges that the district court here clearly both was aware of and understood its discretion to depart downward under U.S.S.G. § 5K2.13, Parker argues through counsel that the district court misapplied § 5K2.13 to the facts here because the court misinterpreted the "volitional prong" of the "significantly reduced mental capacity" definition under § 5K2.13. Appellant Br. at 27–28. We may review the district court's decision only to the extent required to determine whether the court incorrectly applied § 5K2.13 as a matter of law, *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir.), *cert. denied*, 129 S. Ct. 469 (2008), but we may not review the district court's findings of fact related to § 5K2.13, even if "'a court's failure to grant a downward departure is . . . based on clearly erroneous findings of fact,'" *United States v. Puckett*, 422 F.3d 340, 346 (6th Cir. 2005) (quoting *United States v. Clark*, 385 F.3d 609, 623 (6th Cir. 2004)), *cert. denied*, 547 U.S. 1122 (2006); *see also United States v. Jones*, 445 F.3d 865, 868–69 (6th Cir.) (reaffirming that circuit precedent constraining review of a district court's decision not to depart downward to instances where the court failed to recognize or understand its discretion survived *Booker*, but holding that "*Puckett* did not alter our ability to review the overall reasonableness of a district court's sentence"), *cert. denied*, 549 U.S. 912 (2006).

The district court utilized the 2007 edition of the Guidelines Manual. Section 5K2.13, a policy statement, authorizes a sentencing court to exercise its discretion to depart downward if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; *and* (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13 (emphasis added). The Application Note defines "significantly reduced mental capacity" to mean that "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason [(the cognitive impairments prong)]; *or* (B) control behavior that the defendant knows is wrongful [(the volitional impairments prong)]." *Id.* cmt. n.1 (emphasis added); *see United States v. Sadolsky*, 234 F.3d 938, 942 (6th Cir. 2000) (explaining how the "significantly reduced mental capacity" definition has two prongs). "[Section] 5K2.13 does not require a direct causal link between the [significantly reduced mental capacity] and the crime charged." *Sadolsky*, 234 F.3d at 943 (explaining that the significantly reduced mental capacity may be a motivating factor in the offense but need not be part of the offense conduct itself).

The district court did not state explicitly that it found that Parker did suffer from a "significantly reduced mental capacity" as defined under § 5K2.13. Instead, the court moved directly to applying the standard in § 5K2.13 for whether or not someone *with* a significantly reduced mental capacity may receive a downward departure—whether "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; *and* (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13 (emphasis added). The court first found that "although Dr. Beere certainly diagnosed the defendant with [DID], it is certainly not clear and it's certainly not proven, at least in my view, by a

9

preponderance of the evidence, that the defendant committed the offenses while suffering from that affliction." Doc. 80 (Sent. Tr. at 123). The district court thus found that Parker had not met the first requirement under § 5K2.13. The district court next rejected Parker's argument that he could meet the second requirement, stating that "[a]ssuming for purposes of this argument that he did suffer from that particular significantly reduced mental capacity, I don't believe that there's proof that it substantially contributed to the commission of the offenses here." *Id.* at 123–24. One could argue that the district court misapplied § 5K2.13 by assuming that Parker's DID diagnosis met the standard for "significantly reduced mental capacity" instead of making a finding to that effect, but contrary to Parker's argument on appeal, the court did not misapply § 5K2.13's definitions by making an improper finding—the court made *no* finding, which was likely to Parker's benefit.[4] The district court moved directly to considering whether, assuming Parker suffered from a "significantly reduced mental capacity" under § 5K2.13, that status both was present at the time Parker committed the offense and contributed substantially to that commission. For these reasons, we conclude that the district court applied § 5K2.13 in a procedurally proper manner that was not a misinterpretation of the law. Therefore we do not have jurisdiction to consider whether the district court erred in its decision to not grant a departure under § 5K2.13.[5]

---

[4]Parker argues that the district court relied on the wrong set of *facts* through lay testimony to determine whether Parker's DID diagnosis met the "significantly reduced mental capacity" definition, which led the court to ignore the definition's volitional prong. We may not review the district court's factual findings related to its decision not to grant the § 5K2.13 downward departure. *See Puckett*, 422 F.3d at 346. The district court did discuss that trial testimony demonstrated that Parker appeared to have "control of his faculties" and did not "show[] the slightest signs of an alter personality" during the time period of the offense, but these musings did not affect the district court's application of § 5K2.13. Doc. 80 (Sent. Tr. at 123–25).

[5]As in *Santillana*, "[a]lthough we would be free to review a claim that [Parker]'s sentence is unreasonable under the § 3553(a) factors, [Parker] did not raise such a claim in his appeal, thus

10

**C. Use of "Intended Loss" Rather than "Actual Loss" for U.S.S.G. § 2B1.1**

Parker has requested to file a pro se supplemental brief that asserts that the district court misapplied U.S.S.G. § 2B1.1 in its loss calculation because the court utilized a flawed "intended loss" calculation that failed to make a credit against the loss for money returned and the value of collateral. We have considered Parker's pro se issue and we conclude that it lacks merit. We therefore deny his request to file this supplemental brief.

**III. CONCLUSION**

For these reasons, we **AFFIRM** the district court's judgment. Although we question the district court's reliance on the ability of a defendant with a potential mental-health problem that affects his memory to inform his attorney of the effect of his mental-health treatment, we conclude that the district court did not abuse its discretion in denying Parker's motion for a continuance in light of the other circumstances present here. The district court also did not misinterpret the applicable law under U.S.S.G. § 5K2.13, and we therefore conclude that we do not have jurisdiction to consider Parker's further arguments related to the district court's decision not to apply § 5K2.13 to reduce Parker's sentence.

---

waiving further review here," and he "has made no effort to develop [an overall reasonableness] argument here or elsewhere in the record" in response to the government's notice in its brief that Parker's sentence was otherwise procedurally reasonable. *Santillana*, 540 F.3d at 433 & n.1. Parker's brief provides an overview of the § 3553(a) factors and sentencing requirements but does not argue that any other aspects of Parker's sentence were procedurally or substantively unreasonable with reference to those factors, and no such objections were raised at the sentencing hearing. *See* Doc. 80 (Sent. Tr. at 105–51).